2006 OK CR 40

**Charles Frederick WARNER, Appellant**

v.

**STATE of Oklahoma, Appellee.**

No. D–2003–829.

Court of Criminal Appeals of Oklahoma.

Sept. 26, 2006.

An Appeal from the District Court of Oklahoma County; the Honorable Virgil C. Black, District Judge.

Tamra Spradlin, Gina Walker, Assistant Public Defenders, Oklahoma City, OK, Counsel for Appellant at Trial.

Wesley Lane, District Attorney, Lou Keel, Robert Swartz, Assistant District Attorneys, Oklahoma City, OK, Counsel for the State at Trial.

Wendell B. Sutton, Assistant Public Defender, Oklahoma City, OK, Counsel for Appellant on Appeal.

W.A. Drew Edmondson, Attorney General Of Oklahoma, Robert Whittaker, Assistant Attorney General, Oklahoma City, OK, Counsel for the State on Appeal.

## *OPINION*

LUMPKIN, Vice–Presiding Judge.

¶1 Appellant Charles Frederick Warner was tried by jury and convicted of First Degree Murder (Child Abuse) (Count I) (21 O.S.1991, §§ 701.7 and 843) and First Degree Rape (Count II) (21 O.S.1991, §§ 1111 and 1114), Case No. CF–97–5249, in the District Court of Oklahoma County. In Count I, the jury found the existence of two aggravating circumstances and recommended the punishment of death. In Count II, the jury recommended a sentence of seventy-five (75) years imprisonment. The trial court sentenced accordingly. From this judgment and sentence Appellant has perfected this appeal.[1]

¶2 Appellant was charged and convicted of the first degree rape and murder of 11 month old Adrianna Waller. The victim and her mother, Shonda Waller, lived with Appellant and his two children, six year old Charvon and five year old Vonnita. Two year old Dashja, Appellant's daughter from another relationship, stayed with them on occasion. On August 22, 1997, Appellant left early that morning to pay a traffic fine at city court. He returned home at approximately 10:00 to 10:30 a.m. Ms. Waller prepared lunch for Appellant and the older children and fed the victim baby food. At approximately noon, Ms. Waller left for the grocery store. All four children remained at home with Appellant. At the time Ms. Waller left, the victim was dressed in a jumpsuit. Ms. Waller returned home at approximately 2:00 to 2:30 p.m. She glanced in the master bedroom and saw the victim lying on the bed. The victim appeared to be sleeping. Ms. Waller noticed the victim was dressed only in her diaper. Later that afternoon, Appellant and Ms. Waller decided to take all the children with them to run errands. Ms. Waller intended to get the victim ready but Appellant stopped her and volunteered to retrieve the victim from the bedroom. Appellant returned to the living room holding the victim and saying that she was not breathing. When Appellant handed the victim to Ms. Waller, the victim was limp. Ms. Waller began screaming and told Appellant to take them to the emergency room. Appellant drove Ms. Waller and all the children to the emergency room. On the way, Ms. Waller gave the victim CPR.

¶3 They arrived at the hospital at approximately 3:40 p.m. Emergency personnel took the victim and continued resuscitation efforts. All efforts failed and the victim was pronounced dead at 4:07 p.m. Emergency charge nurse Robin Justice was cleaning the victim before Ms. Waller saw her when she noticed bright red blood around the victim's rectum and tears to the rectum. Ms. Justice testified at trial that the injuries appeared to be fresh and recent. She called police and

---

1. Appellant's Petition in Error was filed in this Court on January 23, 2004. Appellant's brief was filed July 26, 2004. The State's brief was filed December 15, 2004. The case was submit- ted to the Court December 23, 2004. Appellant's reply brief was filed January 4, 2005. Oral argument was held September 27, 2005.

notified the attending physicians Drs. McCreight and Hill.

¶4 Dr. McCreight observed bright red blood staining the skin around the victim's rectum and tears around the rectum. X-rays indicated two skull fractures, one of which was depressed, and two fractures to the left jaw. Dr. McCreight testified that the injuries were recent, consistent with a violent shaking and inconsistent with a fall from a bed to a carpeted floor. He also testified that upon sustaining such injuries, the victim would not be able to eat, drink or play. His diagnosis was sexual and physical abuse.

¶5 In conducting the subsequent autopsy, the medical examiner Dr. Choi, determined the cause of death to be multiple injuries to the victim's head, chest, and abdomen. She determined the manner of death to be a homicide. Dr. Choi testified the victim suffered a crushing type injury to her head and internal injuries to her brain. The victim's jaw and three ribs were fractured, her liver was lacerated, and her spleen and lungs were bruised. There were bruises on the victim's chest the size of adult fingertips. She also observed retinal hemorrhages in the victim's eyes, which she testified were consistent with the victim being violently shaken. Additionally, Dr. Choi observed six different tears around the victim's rectum, which she testified were consistent with blunt force penetration. Dr. Choi also testified that upon receiving her injuries, the victim would not have been able to eat, drink or play.

¶6 Interviewed first at the hospital, Appellant told officers he brought the victim, her mother, and the children to the emergency room. He said he had been in the master bedroom with the victim and two year old Dashja. He said Dashja gave the victim something to drink. After a while he left the room. When he returned to the bedroom between approximately 2:00 and 3:00 p.m., the victim was lying on the floor crying. He picked her up and noticed she had hit her head. He said she seemed to be dazed. He tried to comfort her and laid her on the bed to sleep. When he returned to get her at approximately 3:30 p.m., she was not breathing. Later, when Appellant was arrested, he complained to officers that the knuckles on his right hand were sore.

¶7 In a subsequent search of Appellant's home, officers discovered a sexually explicit videotape in the VCR located in the master bedroom, and a jar of Vaseline and a bottle of aloe vera jel nearby.

¶8 At trial, Appellant's son Charvon testified Appellant was the only adult with the children when Ms. Waller went to the store. He said that on the day the victim died, he saw Appellant in the master bedroom shaking her. He said Appellant was often angry with the victim because of her crying and general noisiness. Charvon admitted that he had previously testified the victim died because she was "beat up".

¶9 In his defense, Appellant presented eight witnesses. These included medical experts who testified that the victim would have immediately lost consciousness upon sustaining the head injury, her injuries were consistent with hitting her head on a wooden bed frame, and the injuries to her chest could have occurred during CPR. Defense witnesses also testified that Charvon had said he had lied when he said he saw Appellant hit the victim, that Ms. Waller had originally said Appellant drove her to the store and she waited for him to take her home, that Appellant was left handed, and that he took good care of the victim.

¶10 During the second stage of trial, in addition to incorporating all evidence from the first stage, the State presented evidence showing that Appellant's four year old daughter Vonnita had been physically abused by Appellant, that Appellant physically punished Charvon and Vonnita by whipping them with a belt or electrical cord, and that Appellant had physically abused his ex-wife Vonricca Warner. In mitigation, Appellant presented thirteen witnesses. The jury found the existence of the two alleged aggravating circumstances, "continuing threat" and "especially heinous, atrocious or cruel" and recommended the death penalty. The trial court sentenced accordingly. Appellant raises eighteen propositions of error in his

appeal. These propositions will be addressed in the order in which they arose at trial.[2]

## JURY SELECTION ISSUES

¶ 11 Appellant contends in his second assignment of error that juror misconduct occurred when Juror Scales failed to advise the court during *voir dire* that she knew second stage defense witness Marcella Andrews. Appellant's argument is supported by affidavits attached to his Motion for a New Trial filed with the District Court. These affidavits allege that it was not until Andrews' second stage testimony did Juror Scales recognize her as someone her sister, Annette Williams, had known for years. These affidavits also allege that Juror Scales was present during conversations her sister had with Michelle Thompson, Andrews' sister and the mother of Appellant's daughter Dashja Warner, about Appellant's case.

¶ 12 The record shows that during *voir dire* the trial judge read a list of witnesses, which included Andrews' name. The judge then asked the jury panel if they recognized any of the names. Juror Scales made no response. Later on in *voir dire*, the judge specifically asked Ms. Scales if she knew anything about the case or knew any of the witnesses or people involved. She replied in the negative. Nothing further is contained in the transcript concerning any knowledge Juror Scales may have had of a witness or any objection to Ms. Scales' service on the jury.

¶ 13 Initially, Appellant's argument is based upon information gained from post-verdict interviews and set out in *ex parte* affidavits. The claim of error and supporting affidavits were included as the twelfth of sixteen allegations raised in the Motion for New Trial filed with the District Court. At formal sentencing, the trial judge noted he had been presented a Motion for New Trial. Defense counsel indicated she wanted to stand on the motion. Therefore, no argument or evidence was presented in support of the motion. The trial court overruled the motion without comment. *Id.*

¶ 14 Appellant's *ex parte* affidavits, which have not been subjected to cross-examination, are not properly before this Court for review.[3] *See Stafford v. State*, 1983 OK CR 86, ¶ 15, 665 P.2d 1205, 1211, *vacated on other grounds* 467 U.S. 1212, 104 S.Ct. 2651, 81 L.Ed.2d 359 (1984) (this Court found it improper to permit the litigation of factual issues by *ex parte* affidavits and attachments on appeal). *See also Dewberry v. State*, 1998 OK CR 10, ¶ 9, 954 P.2d 774, 776; *Brown v. State*, 1994 OK CR 12, ¶ 73, 871 P.2d 56, 75, *cert. denied*, 513 U.S. 1003, 115 S.Ct. 517, 130 L.Ed.2d 423 (1994); *Anderson v. State*, 1986 OK CR 57, ¶ 7, 719 P.2d 1282, 1284. While the affidavits were presented to the trial court by virtue of their attachment to the Motion for a New Trial, Appellant failed to offer any evidence or even any argument in support of the affidavits at the hearing on his motion. Therefore, we are left with Appellant's unsupported allegations and a record, which contains neither objection to Juror Scales' jury service nor any mention that she may have known one of the witnesses. This record requires review for plain error only. *See Simpson v. State*, 1994 OK CR 40, ¶ 11, 876 P.2d 690, 694–95.

¶ 15 The purpose of *voir dire* examination is to ascertain whether there are grounds to challenge prospective jurors for either actual or implied bias and to facilitate the intelligent exercise of peremptory challenges. *Mitchell v. State*, 1994 OK CR 70, ¶ 16, 884 P.2d 1186, 1195, *affirmed in part and reversed in part on other grounds*,

---

**2.** Appellant was originally tried and convicted for the victim's rape and murder in 1999. This Court reversed and remanded the conviction and death sentence for a new trial. *See Warner v. State*, 2001 OK CR 11, 29 P.3d 569. A second trial was held in March 2003. However, shortly after the State's opening statement and prior to the presentation of any evidence, a mistrial was declared. The instant appeal concerns the judgment and sentence from the trial occurring in June 2003.

**3.** Supplementation of the record with affidavits in support of a request for an evidentiary hearing on Sixth Amendment claims, pursuant to Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2006) is permitted. However, these affidavits are reviewed only to determine if they contain clear and convincing evidence of counsel's ineffectiveness so as to warrant an evidentiary hearing.

*Mitchell v. Gibson,* 262 F.3d 1036 (10th Cir. 2001); *Perez Enriquez v. State,* 1987 OK CR 164, ¶ 7, 740 P.2d 1204, 1206. Depriving defense counsel of information that could lead to the intelligent exercise of a peremptory challenge is a denial of an appellant's right to a fair and impartial jury. *Perez Enriquez,* 1987 OK CR 164, ¶ 7, 740 P.2d at 1206. Appellant, citing *Tibbetts v. State,* 1985 OK CR 43, 698 P.2d 942, argues that Juror Scales' deliberate withholding of pertinent information was "not consistent with the principles of fundamental fairness." The State also relies on *Tibbetts* but argues the relationship between Juror Scales and witness Andrews was not the type that should have elicited a response from Ms. Scales to the court's questions.

 ¶ 16 Upon a review of the record properly before this Court, we find there is no indication Juror Scales deliberately withheld information that she knew a defense witness. The attenuated nature of any relationship between Juror Scales and witness Andrews was such that Ms. Scales could not have been expected to volunteer such information in response to the court's question. *See Howell v. State,* 1994 OK CR 62, ¶¶ 5–6, 882 P.2d 1086, 1089, *cert. denied,* 514 U.S. 1113, 115 S.Ct. 1968, 131 L.Ed.2d 858 (1995) (this Court rejected appellant's argument that under *Tibbetts* juror's deliberate withholding of pertinent information was not consistent with the principles of fundamental fairness). Further, the record reflects no additional questions were asked by defense counsel regarding Ms. Scales' knowledge of any witnesses. It is the duty of defense counsel to investigate on *voir dire* those matters, which affect a venireman's qualifications to sit as a juror. *Peters v. State,* 1986 OK CR 9, ¶ 9, 712 P.2d 799, 801. That which would have been disclosed by reasonable diligence during *voir dire* cannot later be made grounds with which to attack the verdict. *Id.*

¶ 17 This case is distinguishable from those requiring reversal when a venireman fails to disclose pertinent information when inquiry is made. *See Perez Enriquez,* 1987 OK CR 164, ¶ 7, 740 P.2d at 1206; *Manuel v. State,* 1975 OK CR 174, ¶¶ 4–8, 541 P.2d 233, 235.

Under the facts of this case, if the alleged relationship between Juror Scales and witness Andrews had been known, no basis for a challenge for cause under 22 O.S.2001, § 660, would have been presented. *See Allison v. State,* 1983 OK CR 169, ¶ 58, 675 P.2d 142, 152.

 ¶ 18 It is well established that all doubts regarding juror impartiality must be resolved in favor of the accused. *Hawkins v. State,* 1986 OK CR 58, ¶ 5, 717 P.2d 1156, 1158. However, when an appellant requests a new trial based on juror misconduct, the appellant bears the burden of showing both juror prejudice and harm as a result of the juror's service. *Edwards v. State,* 1991 OK CR 71, ¶ 12, 815 P.2d 670, 674. Defense counsel's mere speculation and surmise is insufficient upon which to cause reversal. *Woodruff v. State,* 1993 OK CR 7, ¶ 13, 846 P.2d 1124, 1132, *cert. denied* 510 U.S. 934, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993).

 ¶ 19 In this case, we have no doubts as to Juror Scales impartiality. There is no indication on the record that she did not honestly answer the questions posed to her on *voir dire.* That she may have known witness Andrews is not sufficient to warrant reversal. A criminal defendant is not entitled to jurors who know nothing about his case. *Id.* The constitutional guarantee of a fair and impartial trial does not exclude service by a juror with knowledge of facts and circumstances involving the case, but only those persons who use that knowledge to form opinions concerning the merits of the case, or who form a negative opinion of the defendant based on that knowledge. *Id.* The record reflects that Ms. Scales was competent to serve as a juror, she did not express any unwillingness to consider all available punishment options, nor did she express any prejudice against Appellant or in favor of the prosecution in this case. Appellant has failed to show that he was denied a fair trial by Ms. Scales' service on the jury. Accordingly, this assignment of error is denied.

### FIRST STAGE ISSUES

¶ 20 Appellant contends in his third assignment of error the trial court erred in admit-

ting improper opinion testimony. Specifically, he refers to testimony from 1) Dr. McCreight regarding his diagnosis of physical and sexual abuse; 2) Rebecca Price, child welfare supervisor, bolstering and vouching for the credibility of Charvon Warner and Detective Willy Edwards' techniques for interviewing children; 3) Kathleen Hatlelid, physician's assistant, regarding her opinion that Vonnita Warner was physically abused "probably on many different occasions"; and 4) Detective Mullinex, lead detective in the case, regarding his opinions that the victim sustained all of her injuries while Shonda Waller was at the store, whether Appellant was an honest person, that Appellant was the only person who could have injured the victim and that the injuries occurred while Appellant was alone with the victim. Appellant argues admission of the improper opinion testimony and improper bolstering was unfairly prejudicial, speculative, and improperly told the jury what result to reach.

¶ 21 The testimony of certain witnesses listed above was the subject of a Motion *in Limine* by defense counsel. The trial court overruled the motion but Appellant was granted continuing objections on all pretrial motions. (Tr.Vol.III, pg.538). Portions of the testimony challenged above were not the subject of the Motion *in Limine* or met with objection at trial. To the extent these failures to object waive appellate review, Appellant has alleged trial counsel ineffectiveness.

¶ 22 "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise." 12 O.S.2001, § 2702. Opinion evidence, which may embrace an ultimate issue, is generally admissible. 12 O.S.2001, § 2704. *See also Marr v. State,* 1987 OK CR 173, ¶ 8, 741 P.2d 884, 886. "While expert witnesses can suggest the inferences, which jurors should draw from the application of specialized knowledge to the facts, opinion testimony that merely tells a jury what result to reach is inadmissible." *Romano v. State,* 1995 OK CR 74, ¶ 21, 909 P.2d 92, 109, *cert. denied,* 519 U.S. 855,

117 S.Ct. 151, 136 L.Ed.2d 96 (1996). Admission of expert testimony is within the trial court's discretion. *Cannon v. State,* 1995 OK CR 45, ¶ 33, 904 P.2d 89, 103, *cert. denied,* 516 U.S. 1176, 116 S.Ct. 1272, 134 L.Ed.2d 219 (1996).

¶ 23 Dr. McCreight's diagnosis that the victim had suffered physical and sexual abuse was based upon his experience as an emergency room physician for over ten years. His diagnosis was also based upon his observations of the victim's injuries. Kathleen Hatlelid's testimony was based upon her eleven years of experience as a physician's assistant specializing in the area of suspected child abuse. Her testimony was also based upon her observation and examination of Vonnita Warner. The opinion testimony of both of these medical experts assisted the jury in understanding the cause of the injuries found on both children. This Court has previously found such testimony properly admissible under § 2702. *See Revilla v. State,* 1994 OK CR 24, ¶ 20, 877 P.2d 1143, 1150; *cert. denied,* 513 U.S. 1096, 115 S.Ct. 764, 130 L.Ed.2d 661 (1995); *Roubideaux v. State,* 1985 OK CR 105, ¶ 23, 707 P.2d 35, 39. Further, the witnesses' opinions were not improper opinion testimony on an ultimate issue since the opinions did not tell the jury what result to reach. *See Welch v. State,* 2000 OK CR 8 ¶ 23, 2 P.3d 356, 369, *cert. denied,* 531 U.S. 1056, 121 S.Ct. 665, 148 L.Ed.2d 567 (2000).

¶ 24 As for Rebecca Price, a twenty-one year employee with the Department of Human Services, Appellant asserts she improperly bolstered and vouched for the credibility of Charvon Warner and Detective Willy Edwards. Argument or evidence is impermissible vouching only if the jury could reasonably believe that the prosecutor, or in this case a witness, is indicating a personal belief in a witness's credibility, either through explicit personal assurances of the witness's veracity or by implicitly indicating that information not presented to the jury supports the witness's testimony. *See Cargle v. State,* 1995 OK CR 77, ¶ 56, 909 P.2d 806, 823, *cert. denied,* 519 U.S. 831, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996). In *Lawrence v. State,* 1990 OK CR 56, 796 P.2d 1176, we addressed

a witness's testimony concerning the veracity of a child abuse victim. We found that a social worker that had interviewed a child abuse victim could not testify as to whether the child victim was lying and or telling the truth. *Id.* 1990 OK CR 56, ¶ 4, 796 P.2d at 1177.

¶ 25 Here, Price testified that when she interviewed Charvon Warner he was six years old. She gave no opinion on the truthfulness of his statements. As for her testimony regarding Detective Edwards, she testified she had observed Detective Edwards and the way he interviewed suspected child abuse victims. She said she thought he used proper techniques in trying to get information from children. Ms. Price's testimony was not improper vouching for Detective Edwards as it addressed only the procedures he used, not the veracity or credibility of any responses he received in his interviews.

 ¶ 26 Appellant's Motion *in Limine* sought to redact improper comments and opinions expressed by Detective Mullenix during his interrogation of Shonda Waller. Appellant also objected to the admission of State's Exhibit 48, the videotape of Ms. Waller's interview, and asked for a contemporaneous instruction advising the jury that the detective's comment about the victim having a broken leg was a mistake. During a bench conference, Detective Mullenix advised the court it was a misunderstanding on his part that the victim had suffered a broken leg. The court directed the prosecution to bring that out before the jury and upon any failure to do so, the court left open the possibility of giving an instruction to the jury. Per the court's direction, on direct examination, Detective Mullenix was asked about his comment on the videotape concerning the victim's broken leg. Detective Mullenix testified he mistakenly thought the doctors had said the victim had suffered a broken leg. Therefore, any error in failing to redact from the videotape the detective's comment concerning the broken leg was cured.

¶ 27 Appellant does not specify what other portions of the videotape should have been redacted, but generally argues that the insufficiently redacted tape should not have been admitted into evidence. The record shows the tape was redacted pursuant to a list of objectionable comments raised by defense counsel. Absent a more specific argument by Appellant, we find neither Detective Mullenix's trial testimony nor the videotape of his interview with Ms. Waller contained improper opinion testimony. *See Cannon v. State,* 1998 OK CR 28, ¶ 11, 961 P.2d 838, 845.

¶ 28 Having reviewed Appellant's claims of improper expert opinion testimony, we find no error warranting reversal or modification. The instructions fully informed the jury as to the use and weight of expert opinion testimony. Any failure by trial counsel to raise an objection to the testimony discussed above does not constitute ineffective assistance of counsel as Appellant has failed to show any resulting prejudice. *See Black v. State,* 2001 OK CR 5, ¶ 65, 21 P.3d 1047, 1070–71, *cert. denied,* 534 U.S. 1004, 122 S.Ct. 483, 151 L.Ed.2d 396 (2001) (the failure to prove either of the *Strickland*[4] required elements is fatal to an appellant's entire claim). Accordingly, this assignment of error is denied.

 ¶ 29 In his fourth assignment of error, Appellant contends he was denied his rights to due process, confrontation, to present a defense, and a fundamentally fair trial when the trial court limited his presentation of evidence regarding Shonda Waller's credibility. Specifically, Appellant asserts he should have been allowed to present testimony that Ms. Waller had offered to give the victim up for adoption; that the victim may have been conceived during a rape; that Ms. Waller may have been out partying days prior to the victim's death, the day after her death and the night of the funeral; whether Ms. Waller tried to give away Appellant's property after his arrest; whether Ms. Waller provided a headstone for the victim's grave; and whether Ms. Waller provided good care for the victim including taking care of her diaper rash.

¶ 30 In support of his argument, Appellant cites case law stating that cross-examination

---

4. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

includes allowing the defendant to inquire into a witness's bias, credibility and motivation for testifying, and that bias is always relevant.[5] Appellant also cites case law stating that the exposure of a witness's motivation is a proper function of the constitutional right of cross-examination,[6] and the right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations.[7] While we have no disagreement with Appellant over the basic law, he has failed to include in his argument how the challenged evidence was relevant to Ms. Waller's bias, credibility or motivation in testifying. In our review of the record, we fail to see how the challenged evidence would have made it more or less probable that Ms. Waller was testifying truthfully. See 12 O.S.2001, § 2401 (relevant evidence is that which makes a material fact more or less probable than it would be without the evidence). Evidence of the quality of care Ms. Waller gave to the victim and whether she intended to give her up for adoption or to purchase a headstone for her grave was collateral to the issue of whether her testimony was truthful.

¶ 31 In excluding the above evidence, the trial court did not prevent Appellant from challenging Ms. Waller's credibility as a truthful witness and did not deny him the ability to put on a defense. Appellant thoroughly cross-examined Ms. Waller with prior inconsistent statements concerning the timetable of events the day of the murder. Through this cross-examination, Appellant set out his defense that the victim's injuries did not occur until Ms. Waller returned home from the grocery store.

¶ 32 Appellant also sought to present evidence that the sexual abuse of the victim had occurred when she was in the custody of Sammy McKinney. To this end, Appellant elicited testimony through Ms. Waller's cross-examination that on August 20, 2 days before the victim's death, she went out to a club and left the victim with Sammy McKinney; she was not home when McKinney attempted to return the victim later that night and she didn't get the victim back until 10:00 a.m. the next morning; and when she changed the victim's diaper Thursday night, the victim's anal area was red. When Appellant sought to admit further information concerning McKinney the trial court denied admission of the evidence finding it did not show McKinney did any act in furtherance of the murder. As the evidence showed the rape and murder occurred close in time, the trial court did not abuse its discretion in excluding the evidence. See Cipriano v. State, 2001 OK CR 25, ¶ 40, 32 P.3d 869, 878 (questions concerning the relevancy of particular evidence are within the discretion of the trial court and the determination that the evidence should be excluded as irrelevant will be affirmed unless there is a clear showing of abuse accompanied by prejudice). Accordingly, this assignment of error is denied.

¶ 33 In his fifth assignment of error, Appellant challenges the sufficiency of the evidence to support his conviction for first degree rape and asserts the State failed to prove the element of penetration. Appellant claims the evidence against him was entirely circumstantial and was thus required to exclude every reasonable hypothesis except that of guilt. See, e.g. Hooks v. State, 2001 OK CR 1, ¶ 8, 19 P.3d 294, 305 ("circumstantial evidence must exclude every reasonable hypothesis other than guilt.") Appellant claims the evidence cannot pass that test. Appellant recognizes this Court's abolishment of the reasonable hypothesis standard in Easlick v. State, 2004 OK CR 21, ¶ 4, 90 P.3d 556, 557, but argues applying Easlick to his case would be a violation of the ex post facto, equal protection and/or due process provisions of the United States and Oklahoma constitutions.

¶ 34 Ex post facto analysis only applies to legislative enactments. Selsor v. Turnbull, 1997 OK CR 61, ¶ 10, 947 P.2d 579,

5. Delaware v. VanArsdall, 475 U.S. 673, 678–79, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); Livingston v. State, 1995 OK CR 68, ¶ 15, 907 P.2d 1088, 1093.

6. Olden v. Kentucky, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988); Wing v. State, 1986 OK CR 164, ¶ 7, 727 P.2d 1383, 1385.

7. Chambers v. Mississippi, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973).

583. However, changes in the law by judicial construction, such as overturning prior case law, implicates the Due Process Clause and requires consideration *of ex post facto* principles. *Id. Easlick* involves only a change in the standard of review used by this Court on appeal. It is not a statutory change. It does not change the crime for which Appellant was charged, it does not increase the punishment prescribed therefore, or increase the quantity or degree of proof necessary to establish guilt at trial. Therefore, applying *Easlick* to Appellant's case does not violate the Due Process Clause or *ex post facto* principles. *See Garrison v. State,* 2004 OK CR 35, ¶ 42, 103 P.3d 590, *Tidmore v. State,* 2004 OK CR 26, ¶ 3, 95 P.3d 176–177.

¶ 35 Under *Easlick* we apply the standard of review set forth in *Spuehler v. State,* 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203–204, "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." A reviewing court must accept all reasons, inferences, and credibility choices that tend to support the verdict. *See Washington v. State,* 1986 OK CR 176, ¶ 8, 729 P.2d 509, 510.

¶ 36 A conviction for rape requires proof of penetration. 21 O.S.2001, § 1111(A). Proof of any penetration, however slight, is sufficient. *Vaughn v. State,* 1985 OK CR 29, ¶ 7, 697 P.2d 963, 966. As the victim in this case was an infant, we have no personal testimony on the element of penetration and rely only on the medical evidence offered. Robin Justice, R.N., testified that in examining the victim in the emergency room she observed bright red blood in her diaper, which indicated a recent injury. She also observed tears around the victim's rectum. Dr. McCreight, the examining physician, testified he also observed blood in the victim's diaper and that the skin around her rectum was stained with blood. He was also of the opinion that the blood indicated a recent injury. Additionally, he observed tears in the rectum.

¶ 37 Ann Morie Spencer, M.D., pediatric emergency physician at Children's Hospital, did not examine the victim but viewed photographs of her injuries. Dr. Spencer testified she observed lacerations around the rectum. She said that kind of injury indicated "some sort of force to that area" shortly before death and that the condition of the area indicated that the amount of force used was considerable, as that area does not tear easily. She also testified that the rectal muscle appeared to be transected or cut through and that such an injury was not the type normally associated with hard stools. On cross-examination, Dr. Spencer admitted she could not tell for sure what caused the victim's injuries.

¶ 38 Dr. Chai Choi of the Medical Examiner's office testified that while performing the autopsy she observed several tears around the victim's rectum. She said the tears indicated the skin around the rectum had been "overstretched" from pressure being placed against the area. Dr. Choi said there was no way for her to determine what caused the injury, but she could not exclude an adult penis as the cause. On cross-examination, Dr. Choi said the injuries to the victim's rectum were all external.

¶ 39 Although not a medical expert witness, Elaine Taylor, forensic chemist with the Oklahoma City Police Department, testified in her examination for DNA analysis, she found no evidence of semen in the diaper or the victim's clothes.

¶ 40 The jury is the exclusive judge of the weight and credibility of the evidence. *Robedeaux v. State,* 1993 OK CR 57, ¶ 43, 866 P.2d 417, 429, *cert. denied,* 513 U.S. 833, 115 S.Ct. 110, 130 L.Ed.2d 57 (1994). Although there may be conflicts in the evidence and different inferences drawn therefrom, this Court will not disturb the jury's verdict if there is competent evidence to support it. *Id.* Viewing this evidence in the light most favorable to the State, we find there was sufficient evidence from which a rational juror could find penetration. Accordingly, reversal is not warranted and this assignment of error is denied.

¶ 41 Appellant contends in his eighth assignment of error the trial court erred in failing to suppress his statements to Detective Willy Edwards. Specifically, he claims

admission of the statements violated: 1) the Fourth Amendment as there was not a proper probable cause determination within 48 hours of his arrest; 2) *Miranda v. Arizona*[8] as the prosecution failed to demonstrate Appellant had been fully informed of his rights prior to making his custodial statements; 3) his Fifth Amendment right to silence as the invocation of his right to remain silent invoked after his first interview with Detective Griffin was not scrupulously honored; and 4) his Sixth Amendment right to counsel because he mentioned to Detective Edwards several times he had an attorney but questioning was not ceased. The above claims were part of a Motion to Suppress filed by Appellant with the trial court. After hearing argument, the trial court denied the motion. During the punishment stage of trial, Detective Edwards testified about his interview with Appellant. The videotape of the interview was admitted at trial, over defense counsel's objections. Appellant's objections have properly preserved the issues for review.

¶ 42 Addressing first Appellant's Fourth Amendment claim, the record shows that on the day of the homicide, August 22, 1997, Appellant was interviewed by detectives during which time he was arrested. On August 26, 1997, a felony information, charging Appellant with the murder and first degree rape of the victim, was filed and an arrest warrant was issued. On August 28, 1997, Detective Edwards interviewed Appellant on his possible abuse of his daughter Vonnita. On September 4, 1997, Appellant made his initial appearance before a magistrate on the first degree murder and rape charges.

¶ 43 A criminal defendant is constitutionally entitled to a probable cause hearing within 48 hours after his arrest. *See County of Riverside v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). A delay of more than 48 hours is presumptively unreasonable. *Black v. State,* 1994 OK CR 4, ¶ 6, 871 P.2d 35, 39, citing *McLaughlin,* 500 U.S. at 57, 111 S.Ct. at 1670, 114 L.Ed.2d at 63. After the expiration of the 48–hour period, the burden of proof shifts to the State to demonstrate "the existence of a bona fide emergency or other extraordinary circumstance," to rebut the presumption of unreasonableness. *Id.* "The longer the time a defendant sits in jail without some form of probable cause hearing, the more likely the detention will become oppressive to him and the more likely he will be coerced into giving evidence he otherwise would not give …" *Id.* 1994 OK CR 4, ¶ 7, 871 P.2d at 39.

¶ 44 The State concedes the probable cause determination in this case was made more than 48 hours after Appellant's arrest. However, the State asserts that under *Darks v. State,* 1998 OK CR 15, ¶ 17, 954 P.2d 152, 159, admission of evidence gathered after forty-eight (48) hours of detention is subject to harmless error analysis.

¶ 45 Although the probable cause determination in this case was not made timely, it was made prior to Appellant's interview with Detective Edwards. Further, the interview with Detective Edwards concerned the abuse of Vonnita, not the homicide victim. Appellant claims his statements to Detective Edwards should have been suppressed as he was influenced by the coercive atmosphere. Appellant does not explain his claim. Our review of the record shows Appellant was not coerced into giving evidence he otherwise would not have given. The trial court found his statements were made knowingly and voluntarily. Therefore, the failure to have the probable cause determination timely was harmless error as Appellant's statements were not a product of an illegal detention.

¶ 46 Appellant's second complaint is that his statements were admitted in violation of *Miranda v. Arizona* as Detective Edwards failed to fully inform him of his rights. Appellant directs us to the videotape of his interview where Detective Edwards read him an abbreviated form of the *Miranda* warning.

¶ 47 At the *Jackson v. Denno*[9] hearing, Detective Edwards testified that before he

---

8. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

9. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

took Appellant out of his cell for the interview, he read Appellant his *Miranda* rights from a card he carried in his pocket. Edwards testified that Appellant indicated he understood his rights and wanted to speak with the detective. Edwards said he then checked Appellant out of the jail, walked him across the street to an interview room at the police department, started the videotape, and proceeded to interview Appellant. Edwards testified he told Appellant he was there to interview him about abuse to Vonnita, not anything related to the homicide of Adrianna Waller. Edwards said once he and Appellant arrived at the interview room, he went over Appellant's rights with him again, although he did not give him the full *Miranda* warning again.

¶ 48 On cross-examination, Edwards admitted it was not noted in his police report that he had read Appellant the complete *Miranda* warning at the jail. He also said he had a rights waiver form prepared for Appellant but he forgot to have Appellant sign it.

¶ 49 In his appellate brief, Appellant compares Detective Edwards' testimony to his testimony given at Appellant's first trial and asserts Edwards' rendition of the *Miranda* warning was different in the two trials. What may or may not have occurred at the first trial is not an issue in this appeal, nor was it an issue in the *Jackson v. Denno* hearing before the trial court. Although Appellant contradicted Detective Edwards' testimony, the trial court considered the evidence and concluded Edwards had properly given Appellant the full *Miranda* warning, and that Appellant's statements were made knowingly and voluntarily. In our review of the record, we find the court's ruling is supported by sufficient evidence; therefore admission of Appellant's statements was proper. *See Romano,* 1995 OK CR 74, ¶ 19, 909 P.2d at 109 (where a trial court determines in a *Jackson v. Denno* hearing that a statement was made voluntarily and not in response to police questioning this Court will not disturb the trial court's ruling when it is supported by sufficient evidence).

¶ 50 In his third claim, Appellant asserts his Fifth Amendment right to remain silent was violated by the failure of the police to scrupulously honor his decision to cut off questioning at the end of the first interview pursuant to *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Five days before Appellant's interview with Detective Edwards about the possible abuse of Vonnita, Appellant was interviewed by Detective Griffin about the victim's homicide.

¶ 51 Once an accused asserts his right to counsel, police cannot resume questioning until an attorney has been appointed for him, or until he initiates further conversations with police. *Robinson v. State,* 1986 OK CR 86, ¶ 5, 721 P.2d 419, 421, citing *Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981). "On the other hand, questioning of a suspect who has asserted his right to remain silent can resume if the suspect's initial assertion of the right was 'scrupulously honored' by police." *Id.,* citing *Michigan v. Mosley, 423* U.S. at 103, 96 S.Ct. at 326. The United States Supreme Court indicated in *Mosley* that the question of whether an accused's "right to cut off questioning" had been "scrupulously honored" should be determined on a case-by-case approach, applying the so-called "totality of the circumstances" test to the question of a valid renewal of interrogation after initial assertion of the right. *Id.* In *Mosley,* the Supreme Court found that where there was a two (2) hour time period between questioning on two unrelated crimes; where the defendant was transported to a different part of the same building; where the police honored the defendant's refusal to submit to questioning; and where both interrogations were preceded by *Miranda* warnings, the admission in evidence of Mosley's incriminating statement did not violate the principles of *Miranda.*

¶ 52 In the present case, the moment Appellant told Detective Griffin he did not want to talk to police, questioning ceased. Appellant was not interviewed again for approximately five days and the second interview was conducted by a different officer. While the second interview by Detective Edwards was conducted in the same interview room where Appellant had been questioned by Detective Griffin, Appellant was given the

full *Miranda* warning before the second interview. It was not until Appellant waived his rights that Detective Edwards checked him out of jail and took him to the police station for interrogation. Further, the second interview involved a crime entirely separate from the homicide, which was the subject of the first interview.

¶ 53 Under the totality of the circumstances in this case, the police "scrupulously honored" Appellant's invocation of his right to remain silent, and the trial court did not err in denying the motion to suppress. *See Storm v. State,* 1987 OK CR 82, ¶ 9, 736 P.2d 1000, 1002; *Robinson,* 1986 OK CR 86, ¶ 6, 721 P.2d at 422.

¶ 54 In his final complaint in this assignment of error, Appellant asserts that his Sixth Amendment right to counsel had attached prior to the interview with Detective Edwards and that he invoked that right during the interview. He argues Edwards' failure to honor the invocation of his right to counsel was a constitutional violation which warranted suppression of his statement.

¶ 55 The Sixth Amendment right to counsel attaches at arraignment and a defendant has a right to counsel at any post-arraignment questioning. *Miller v. State,* 2001 OK CR 17, ¶ 9, 29 P.3d 1077, 1080, citing *Michigan v. Jackson,* 475 U.S. 625, 632, 106 S.Ct. 1404, 1408, 89 L.Ed.2d 631 (1986). If police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid. *Id.* However, the Sixth Amendment right to counsel is case specific. *Valdez,* 1995 OK CR 18, ¶ 33, 900 P.2d 363, 374, *cert. denied,* 516 U.S. 967, 116 S.Ct. 425, 133 L.Ed.2d 341 (1995) citing *McNeil v. Wisconsin,* 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991). The right attaches only to charged offenses and there is no exception for factually unrelated offenses. *Texas v. Cobb,* 532 U.S. 162, 168, 121 S.Ct. 1335, 1341, 149 L.Ed.2d 321 (2001). *See also Pickens v. State,* 2001 OK CR 3, ¶ 13, 19 P.3d 866, 874, *cert. denied,* 536 U.S. 961, 122 S.Ct. 2668, 153 L.Ed.2d 842 (2002); *Valdez,* 1995 OK CR 18, ¶ 33, 900 P.2d at 374.

¶ 56 At the time of the interview by Detective Edwards, charges had been filed against Appellant for the rape and murder of Adrianna Waller, and counsel had been appointed in that case. Charges had not been filed for the abuse of Vonnita Warner. Therefore, Appellant's Sixth Amendment right attached only to the rape and murder charges. Any request for an attorney during the interview with Detective Edwards pertaining to the abuse of Vonnita Warner was not an invocation of Appellant's right to counsel in the present case.

¶ 57 Appellant further argues that because police did not scrupulously follow *Miranda, Texas v. Cobb* is distinguishable. Appellant asserts that notwithstanding the majority opinion in *Cobb,* this Court should adopt a stricter standard for Article II, §§ 7 and 20 of the Oklahoma Constitution and hold that the right to counsel attached to the uncharged child abuse offense. As previously addressed, we found the police sufficiently followed the dictates of *Miranda* by reading Appellant the entire *Miranda* warning at the jail before transporting Appellant across the street to the police station to record his statement. Therefore, it is not necessary for us to even consider adoption of a stricter standard of review in this case.

¶ 58 Additionally, Appellant argues that even if this Court finds the Sixth Amendment right to counsel had not attached to the Vonnita Warner case, his Fifth Amendment right to counsel was invoked when he requested counsel during the interview. The Fifth Amendment right to have counsel present during custodial interrogation is not invoked unless a suspect clearly and unambiguously asserts it. *Valdez,* 1995 OK CR 18, ¶ 30, 900 P.2d at 373 citing *Davis v. United States,* 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). Only those statements that can "reasonably be construed to be an expression of a desire for the assistance of an attorney" are considered actual invocations of the right to counsel. *Id.* All circumstances existing prior to the purported invocation can be used to help determine whether an accused unambiguously and unequivocally requested the presence of an

attorney. *Id,* 1995 OK CR 18, ¶ 30, 900 P.2d at 374. The Fifth Amendment right to have counsel present during custodial interrogation is non-offense-specific. Once it is invoked, police may not initiate interrogation concerning any offense, past or present, charged or uncharged. *Id.,* 1995 OK CR 18, ¶ 28, 900 P.2d at 373 citing *McNeil v. Wisconsin,* 501 U.S. at 176, 111 S.Ct. at 2208.

 ¶ 59 At the *in-camera* hearing on the Motion to Suppress, Detective Edwards testified on cross-examination that during the interview Appellant said, "do I need a lawyer present at this time?" Appellant testified that he tried to say he wanted counsel, but was cut off from doing so by the detective's questions. The trial judge stated he had listened to the tape three different times, and he did not hear the defendant ask for a lawyer. The judge noted that Appellant said, "I'd like" and then continued to talk with the detective. Our review of the record supports the trial court's finding. Appellant did not make a clear and unequivocal request for counsel. *See Valdez,* 1995 OK CR 18, ¶¶ 31–32, 900 P.2d at 374. *See also LaFevers v. State,* 1995 OK CR 26, ¶¶ 6–7, 897 P.2d 292, 299, *cert. denied,* 516 U.S. 1095, 116 S.Ct. 820, 133 L.Ed.2d 763 (1996). While there is a point on the videotape of the interview where both Appellant and the detective talk at the same time, Appellant's continued conversation with the detective confirms the finding that he did not request the assistance of counsel and that he wished to talk with the detective. Accordingly, admission of Appellant's statements did not violate his Fifth Amendment right to counsel.

¶ 60 Having thoroughly reviewed Appellant's allegations of error regarding the admission of his statements from the interview with Detective Edwards, we find no violations of the Fourth, Fifth, or Sixth Amendments. Accordingly, this assignment of error is denied.

¶ 61 In his ninth assignment of error, Appellant contends the trial court erred in admitting the following evidence: 1) that during the two weeks before the victim's murder, Appellant had requested and been denied anal sex from Shonda Waller; 2) a videotape containing sexually explicit conduct between adults; and 3) testimony from Rebecca Price that Charvon Warner had said Appellant had whipped him several times with a belt and his hand. Appellant argues admission of this evidence violated the prohibition on admission of evidence of other crimes or bad acts pursuant to 12 O.S.2001, § 2404(B). Appellant's objections at trial have properly preserved this issue for appellate review.

 ¶ 62 Title 12 O.S.2001, § 2404(B) prohibits the admission of evidence of "other crimes, wrongs, or acts" to prove the character of a person in order to show action in conformity therewith absent one of the specifically listed exceptions. An act that is not a violation of the criminal law is nonetheless governed by § 2404(B) where it carries a stigma that could unduly prejudice an accused in the eyes of the jury. *Freeman v. State,* 1988 OK CR 192, ¶ 3, 767 P.2d 1354, 1355. When the State seeks to introduce evidence of a crime other than the one charged, it must comply with the procedures in *Burks v. State,* 1979 OK CR 10, ¶ 2, 594 P.2d 771, 772, *overruled in part on other grounds, Jones v. State,* 1989 OK CR 7, 772 P.2d 922. *See Holt v. State,* 1989 OK CR 21, ¶ 4, 774 P.2d 476, 477.

 ¶ 63 To be admissible, evidence of uncharged offenses or bad acts must be probative of a disputed issue of the crime charged, there must be a visible connection between the crimes, evidence of the other crime(s) must be necessary to support the State's burden of proof, proof of the other crime(s) must be clear and convincing, the probative value of the evidence must outweigh the prejudice to the accused and the trial court must issue contemporaneous and final limiting instructions. *See Welch,* 2000 OK CR 8 ¶ 8, 2 P.3d at 365. When other crimes evidence is so prejudicial it denies a defendant his right to be tried only for the offense charged, or where its minimal relevancy suggests the possibility the evidence is being offered to show a defendant is acting in conformity with his true character, the evidence should be suppressed. *Id.* None of the challenged evidence in this case was other crimes evidence. At most, it was bad acts

evidence that could unduly prejudice Appellant in the eyes of the jury.

¶ 64 Shonda Waller stated that she and Appellant had "normal" sexual relations until two weeks before the victim's murder. During that two week time period, she had ceased all sexual relations, with the exception of one time, with Appellant. During that time period, Appellant asked her three to five times to have anal intercourse and she refused. The felony information in this case charged Appellant with first degree rape of the victim by anal intercourse. The evidence showed the victim had sustained injuries to her rectum while in Appellant's care, and those injuries were caused by pressure from a blunt force object. Appellant's defense was innocence, and that someone else committed the rape. Ms. Waller's statements were relevant to show Appellant's motive and intent to attempt anal intercourse with the victim, and to show Appellant's identity as the one who caused the injuries to the victim's rectum.

¶ 65 *Burks* requires the State to give a pre-trial notice of the other crimes or bad acts evidence it intends to introduce. The purpose of the notice requirement is to prevent surprise on the part of the defense and to allow time for the defense to be heard prior to the evidence being placed before the jury. *McClendon v. State,* 1989 OK CR 29, ¶ 16, 777 P.2d 948, 952; *Scott v. State,* 1983 OK CR 58, ¶ 6, 663 P.2d 17, 19. A notice does not appear in the record of this case. Arguments on the evidence were heard both pre-trial and during trial and a lack of notice and/or surprise was never raised by the defense. The State asserts on appeal that Appellant had notice of Ms. Waller's testimony since his first trial in 1999. However, as we do not have the record of that trial, we are unable to ascertain if the *Burks* notice was filed at that time.

¶ 66 Proof of the evidence was clear and convincing, and it was not cumulative but necessary to sustain the State's burden of proof in this circumstantial evidence case. The prejudicial effect of the evidence, while significant, did not outweigh its probative value. *See Bryan v. State,* 1997 OK CR 15, ¶ 34, 935 P.2d 338, 357, *cert. denied,* 522 U.S. 957, 118 S.Ct. 383, 139 L.Ed.2d 299 (1997).

The trial court did not err in admitting Ms. Waller's testimony.

¶ 67 Shonda Waller further testified she had been watching a videotape called "The Crow" when she left for the store and that she had left the tape in the VCR when she left the house. Pursuant to a search waiver, police found a different videotape in the VCR. The videotape found in the VCR was cued up to a scene of sexually explicit behavior between men and women. Also near the VCR and TV, police found a jar of Vaseline and a jar of aloe vera gel. Waller testified those items were normally kept in the bathroom. The videotape was admitted into evidence as State's Exhibit 44. No contemporaneous defense objection was raised.

¶ 68 Evidence is considered *res gestae,* and not other crimes or bad acts evidence when: a) it is so closely connected to the charged offense as to form part of the entire transaction; b) it is necessary to give the jury a complete understanding of the crime; or c) when it is central to the chain of events. *Rogers v. State,* 1995 OK CR 8, ¶ 21, 890 P.2d 959, 971, *cert. denied,* 516 U.S. 919, 116 S.Ct. 312, 133 L.Ed.2d 215 (1995). The evidence indicated the sexually explicit tape was put into the VCR while Ms. Waller was at the store and Appellant was home with the victim. The videotape, along with the Vaseline and aloe gel, was relevant to show what Appellant was watching and thinking when he was with the victim and just prior to the commission of the offense. The videotape was therefore central to the chain of events leading up to the crime and its admission gave the jury a complete picture of the entire crime. As the videotape was properly admissible, counsel's failure to specifically object to its admission was not ineffective assistance of counsel.

¶ 69 During the second stage of trial, Rebecca Price, testifying for the defense, recounted her interview with Charvon Warner the day after the murder. She stated on cross-examination Charvon told her that Appellant whipped him with his hand and a belt. Defense counsel argued the response was beyond the scope of direct and "was getting into *Burks* notice stuff." The trial court

found the testimony was not evidence of a bad act and overruled the objection.

¶ 70 During the first stage of trial, evidence showed that Appellant was the disciplinarian of the children. That Appellant spanked or whipped Charvon as a form of discipline was neither a crime nor a bad act for which the State could have been expected to file a *Burks* notice. Appellant has failed to show how he was prejudiced by this testimony. The point of the State's cross-examination of Price was to elicit testimony that Charvon said Appellant yelled at the victim. Appellant's corporal punishment of Charvon was not referred to again. Accordingly, Appellant has failed to meet his burden of establishing that any prejudice from the evidence substantially outweighed its probative value. The trial court did not err in admitting the evidence.

¶ 71 In his tenth assignment of error, Appellant asserts he was denied his rights of equal protection, due process, a jury trial, to present a defense and mitigation evidence, and to confront witnesses by the trial court's exclusion of third party perpetrator evidence that Sammy McKinney had previously committed oral sodomy on a child. Appellant asserts that the excluded evidence, along with Waller's "inconsistent and discredited testimony" regarding whether she always checked the victim's bottom and whether she saw any tears or bleeding, and evidence that McKinney babysat the victim Wednesday night through Thursday afternoon, showed more than a possible motive. According to Appellant, the excluded evidence showed a legitimate tendency to create a reasonable doubt of his guilt to the first degree rape charge.

¶ 72 The record shows that during the testimony of Detective Mullenix, the defense sought to question the detective as to whether during the course of his investigation he learned that the victim was with McKinney the Thursday before her death, and whether he inquired of Estella Grissom, McKinney's mother, whether her son had a history of sex crimes. The prosecutor informed the court the detective's report indicated that when McKinney was 14 years old there were allegations that he had committed oral sodomy on a 5 or 6 year old boy and that McKinney "got some kind of counseling and that was the end of it." The prosecutor stated there was no evidence "of any adjudication or anything else." The court asked defense counsel if she had any evidence to show that McKinney acted in furtherance of the murder, that he was a participant in any way, that he committed any overt acts, or if there was any evidence to connect him to the case on trial. Defense counsel replied that as to the murder, there was no evidence; but as to the rape it was relevant to show that someone other than Appellant could have committed the rape. The trial court sustained the State's objection finding the proffered evidence not relevant as the rape and murder in the case occurred contemporaneously.

¶ 73 We state publicly now what we have previously stated in unpublished opinions that evidence tending to show that someone besides the defendant committed the crime may clearly be relevant, as it may make it less probable that the defendant himself committed the crime. 12 O.S.2001, § 2401. In *Romano v. State*, 1993 OK CR 8, ¶ 45, 847 P.2d 368, 381, *cert. granted in part* and *affirmed*, 512 U.S. 1, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994), this Court stated that evidence offered to show that some other person committed the crime charged must connect such other person with the fact; that is some overt act on the part of another towards the commission of the crime itself. It is not enough to show a possible motive on the part of another; there must be evidence of acts or circumstances that tend clearly to point to another, rather than the accused. *Id. See also Dodd v. State*, 2004 OK CR 31, ¶ 42, 100 P.3d 1017, 1032–33; *Dennis v. State*, 1994 OK CR 34, ¶ 15, 879 P.2d 1227, 1232; *Woodruff v. State*, 1993 OK CR 7, ¶ 47, 846 P.2d 1124, 1137, *cert. denied*, 510 U.S. 934, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993).

¶ 74 Appellant argues the "overt act" requirement is "too strict" and violates his constitutional rights. This argument was rejected in *Gore v. State*, 2005 OK CR 14, 119 P.3d 1268, wherein we stated:

As our test for determining the admissibility of third party perpetrator evidence is

based upon more than the single finding of an overt act in the commission of the crime, the standard is not too strict and is consistent with constitutional principles. It does not prevent the defendant from presenting a defense or presenting evidence that another person may have committed the crime as long as there is some quantum of evidence, which is more than mere suspicion and innuendo, that connects the third party to the commission of the crime. It does not directly control the scope of defense counsel's argument to the jury and counsel is allowed to argue any inference that can be fairly drawn from the evidence. Accordingly, we reject Appellant's suggestion we abandon our test. 2005 OK CR 14, at ¶ 24, 119 P.3d at 1276.[10]

¶ 75 The excluded evidence in the present case falls far short of showing a possible motive on McKinney's part or actions, conduct, or opportunity by McKinney toward the commission of the rape. By the time of Appellant's trial, the oral sodomy allegations against McKinney were eighteen years old. There was no evidence he committed that crime or any similar crimes again. Further, the evidence in this case showed the rape and murder of the victim occurred at most moments apart. The injuries and blood on the victim's rectum were clearly visible when she was examined at the hospital emergency room. Assuming arguendo, the victim was with McKinney until Thursday afternoon, it was still over 26 hours prior to her death. According to the testimony of the medical experts, the victim's injuries were "fresh" and only hours old. Combining the excluded evidence with any inconsistencies in Shonda Waller's testimony does not connect or point to McKinney as the rapist, rather than Appellant. In fact, it shows the allegation against McKinney is nothing more than mere speculation and not objectively supported by evidence that would provide the legal foundation required for this Court to recognize and instruct the jury on an affirmative defense.

¶ 76 Further, exclusion of the evidence did not hamper Appellant's ability to cross-examine witnesses or to present a defense. Appellant was simply barred from presenting what, in the trial court's discretionary determination, did not tend to be probative of any fact in issue. In fact, Waller did testify on cross-examination that the victim had been with McKinney the Wednesday night before her death. She also testified she checked the victim's bottom Thursday when she changed her diaper and the anal area was red. Thus, Appellant was permitted, within the parameters of the Evidence Code, to advance and attempt to support his claim that a reasonable doubt existed that he was the perpetrator of the rape.[11]

¶ 77 The record shows there was no evidence of acts or circumstances that tended clearly to point to McKinney, rather than Appellant, as the rapist. Nor was there evidence of any overt act linking McKinney to the rape of the victim. Appellant has therefore failed to make a threshold showing for the admission of alternative suspect evidence. *Id.* Accordingly, the trial court did not abuse its discretion in excluding the evidence. This assignment of error is denied.

### FIRST STAGE JURY INSTRUCTIONS

¶ 78 Appellant asserts in his sixth assignment of error the trial court erred in refusing to give his requested jury instruction defining "willful" as requiring an intent to injure. Instead, the court gave a definition informing the jury that "willful" did not require an intent to injure. Appellant recognizes that in *Fairchild v. State,* 1999 OK CR 49, ¶¶ 47, 998 P.2d 611, 622, *cert. denied,* 532 U.S. 1039, 121 S.Ct. 2002, 149 L.Ed.2d 1004 (2001), this Court held that child abuse murder is a general intent crime and does not require a specific intent to injure. However, Appellant relies on *Hockersmith v. State,* 1996 OK CR 51, ¶ 12, 926 P.2d 793, 795, to

---

10. In *Gore,* we found evidence of the prior conviction of the alternative suspect for the same crime Gore was charged with committing, despite the fact the conviction had been overturned based upon the application of scientific technology not available at the time of the prior trial, was sufficient to connect the alternative suspect to the crime and met the "overt act" requirement.

11. However, we note no explanation has been offered why McKinney and Grissom were not called as witnesses.

argue that in 1997 when he was charged with the victim's murder, this Court required the State to prove the defendant acted with a specific intent to injure in order to support a conviction for child abuse murder. Appellant argues that applying the 1999 *Fairchild* decision to his case violates *ex post facto* principles as incorporated in the Due Process Clause of the Fourteenth Amendment.

¶ 79 In *Fairchild,* this Court overruled *Hockersmith* to the extent it required a specific intent to injure finding it inconsistent with the established case law set forth in *Workman v. State,* 1991 OK CR 125, ¶ 22, 824 P.2d 378, 383. *Fairchild,* 1999 OK CR 49, ¶ 45, 998 P.2d at 621–22. This Court clarified previous opinions by stating "that the 'intent to injure' mentioned in those cases meant only that general intent included within the terms 'willfully' or 'maliciously.'" 1999 OK CR 49, ¶ 51, 998 P.2d at 622–23. *Fairchild* did not change the law, and its application to Appellant's case is not a violation of the *ex post facto* prohibition.

¶ 80 In *Evans v. Ray,* 390 F.3d 1247 (10th Cir.2004), the Tenth Circuit Court of Appeals addressed whether the application of *Fairchild* to a 1996 murder was an *ex post facto* violation. The Tenth Circuit stated that the prohibition of the *ex post facto* application of judicial decisions is less extensive than the prohibition of *ex post facto* statutes. 390 F.3d at 1251. Quoting *Rogers v. Tennessee,* 532 U.S. 451, 460, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001), the Court said " 'due process limitations on the retroactive application of judicial interpretations of criminal statutes' only apply to those decisions 'that are unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" *Id.* The Tenth Circuit found that as *Hockersmith* did not overrule *Workman,* the law on intent to injure in child abuse murder was conflicting at the time *Hockersmith* was handed down. *Id.* at 1253. Therefore, the *Fairchild* decision, in which this Court attempted to resolve the conflict and clarify the law, was not only "not unexpected and indefensible in light of the plain language of the statute and Oklahoma case law ..." but also "eminently predictable". *Id.* Further, the Tenth Circuit found

that the *Fairchild* decision to agree with *Workman* was "certainly defensible in light of the statutory language of '21 O.S.2001, § 701.7(C) and Oklahoma's long history of interpreting the statutory requirement of 'willful' as a general intent requirement rather than as a specific intent requirement". *Id.* Accordingly, there was no *ex post facto* violation. Similarly, we find no *ex post facto* violation in applying *Fairchild* to Appellant's 1997 crime.

¶ 81 Alternatively, Appellant argues that by being convicted of a crime that did not possess an element of either implied or express malice, he has been denied due process by a strict liability offense. In *Gilson v. State,* 2000 OK CR 14, ¶ 41, 8 P.3d 883, 903, *cert. denied,* 532 U.S. 962, 121 S.Ct. 1496, 149 L.Ed.2d 381 (2001), we stated the child abuse murder statute should be interpreted in the same manner as the felony murder doctrine. Just as proof of the underlying felony is needed to prove the intent necessary for felony murder, proof of the underlying act of child abuse is needed to prove the intent necessary for a child abuse murder conviction. *Id.* Because there is an intent requirement for child abuse, child abuse murder is not a strict liability crime. Accordingly, this assignment of error is denied.

## SECOND STAGE ISSUES

¶ 82 Appellant asserts in his first assignment of error that he was denied a fair sentencing proceeding in violation of the Fourteenth Amendment when the jury was allowed to separate and commingle with non-jurors during second stage deliberations without notice to defense counsel. In response, the State argues there was no evidence the jury had any improper contact with non-jurors, therefore Appellant is not entitled to relief.

¶ 83 The record shows that on the fifth day of trial, one of the jurors (who was later chosen as foreperson of the jury) broke her foot. The juror stated she would try to continue her jury service. The trial judge advised her that if she could not, there was an alternate juror available. When it came time for first stage deliberations, the juror

could not climb the stairs to the jury room. Therefore, the courtroom was converted into a makeshift jury room. The courtroom was cleared of materials, the doors were locked, and the glass windows in the courtroom doors were covered. Defense counsel was aware of this arrangement and did not object.

¶ 84 On the last day of trial, the jury was allowed to recess for lunch prior to beginning its deliberations on punishment. The jury again used the cleared courtroom for its deliberations. Defense counsel again raised no objection.

¶ 85 In support of his request for relief, Appellant relies on six (6) sworn affidavits attached to his Motion for New Trial filed with the District Court prior to formal sentencing. The first affidavit is from an investigator with the Oklahoma County Public Defender's Office who states she conducted post-trial interviews with three jurors. According to the affidavit, the jurors stated the jury took several breaks during deliberations; the lead detective on the case, who was also a prosecution witness, was seen in the trial judge's outer office where a number of jurors were smoking; and upon returning from a break, the bailiff told the jurors that if they did not reach a decision that night, they would all have to go to the foreperson's doctor's appointment the next morning.

¶ 86 Legal interns and another attorney from the Oklahoma County Public Defender's Office prepared three (3) other affidavits. These affidavits state that during deliberations, jurors were observed smoking and talking with the judge, his staff, and the lead detective in the judge's chambers; jurors were allowed to go to their cars during deliberations; they overheard the bailiff's comment to the jury about accompanying the foreperson to her doctor's appointment; and one juror was observed during a break talking on the telephone and explaining they were still deliberating and they would probably be spending the night somewhere.

¶ 87 Co-counsel Gina Walker also prepared an affidavit in which she states she observed the jury's separation during second stage deliberations and she saw some of the jurors and the lead detective in the judge's cham-

bers smoking. She also states that in post-verdict questioning jurors commented that they did not want to go to the foreperson's doctor's appointment the next morning. This last statement was echoed by lead defense counsel Tamara Spradlin in her sworn affidavit.

¶ 88 While these affidavits were included in the Motion for New Trial, defense counsel merely stood on the motion and did not argue or offer evidence in support of the motion. The trial court overruled the motion without comment.

¶ 89 The record before this Court indicates no objection was raised by defense counsel to any breaks or separation by the jury during deliberations. In his appellate brief, Appellant raises the alternative argument that defense counsel was ineffective in failing to take whatever steps were necessary to make an objection and record. However, Appellant did not include this claim of ineffectiveness in his Rule 3.11 Motion to Supplement Direct Appeal Record With Attached Exhibits And/Or For An Evidentiary Hearing which was filed contemporaneously with the direct appeal brief.

¶ 90 In its appellate brief, the State responded to the allegations raised in Proposition I and argued there was no evidence in the record to support a finding that there had been an improper separation of the jury during second stage deliberations. The State argued the case should be remanded to the district court for reception of relevant affidavits or for an evidentiary hearing. Filed contemporaneously with the appellate brief was a Motion to Supplement Record in Response to Defendant's Motion for New Trial. Attached to the Motion are eleven (11) affidavits. These affidavits are from one of the prosecutors, the bailiff, and nine (9) jurors in the case stating in effect there was no break in the jury's deliberation.

¶ 91 The claim of error relating to an improper separation of the jury during deliberations and any resulting prejudice was addressed at oral argument. As a result of questions raised at oral argument, Appellant filed a Motion to Amend Appellant's Rule 3.11 Motion seeking to amend his 3.11 motion

to incorporate by reference the affidavits attached to his Motion for New Trial. Appellant also filed a Motion to File Supplemental Brief seeking to address concerns raised at the oral argument concerning "jury coercion and sequestration".

¶ 92 Based upon a thorough review of the record properly before us and the relevant statutory and case law, we determined the record was not sufficient for this Court to review the alleged error.[12] Essentially, we were presented with "dueling affidavits" from both the State and the defense which raised genuine issues of fact which had not been examined by the court below. We therefore remanded the case to the District Court for an evidentiary hearing on the issue of whether the jurors were allowed to separate and commingle with non-jurors during deliberations, and what effect if any this had on the verdict. *See* Rules 3.11(A) & 3.12(E), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2006).

¶ 93 The District Court was ordered to determine, based upon the time of trial: 1) whether there was a break in second stage jury deliberations and the jury was allowed to separate; 2) whether jurors were allowed to commingle with non-jurors during any point in the deliberations, and whether they were exposed to any outside influences; 3) whether the bailiff informed the jury that if they did not reach a verdict that evening, the jury would have to accompany the foreperson to her doctor's appointment the next morning, and if such a statement was made whether the jury was coerced into reaching a verdict by the statement; 4) whether the defense had sufficiently raised the presumption of prejudice pursuant to 22 O.S.2001, § 857 and *Mooney v. State*, 1999 OK CR 34, ¶ 63, 990 P.2d 875, 892; and 5) whether defense counsel was aware of any break in the jury's deliberations and whether defense counsel had the opportunity to raise a timely objection on the record but failed to do so.

¶ 94 In its findings of fact and conclusions of law the District Court stated, in pertinent part, it received testimony from seven (7) witnesses on behalf of Appellant. These witnesses included the trial judge[13]; his bailiff; first and second chair defense counsel; and an attorney, legal intern, and law student from the Public Defender's Office.[14] The court also received testimony from fifteen (15) witnesses for the State, including all twelve (12) jurors from Appellant's trial; the trial judge's court reporter; Detective Mullenix, the lead detective in the case; and an assistant district attorney.

¶ 95 After a thorough recitation of the facts, based upon the testimony given at the hearing, the court set forth its findings to the questions posed by this Court. Essentially, the District Court found: 1) there was no break in second stage deliberations during which jurors were allowed to separate; 2) jurors were not allowed to commingle with non-jurors during deliberations nor were they exposed to any outside influences; 3) the bailiff did tell the jury that if they did not reach a verdict, they would have to accompany the foreperson to her doctor's appoint-

12. The record on appeal is formulated only by matters which have been admitted during proceedings in the trial court. Rule 3.11(B)(3), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2006). Items, documents and pleadings, included in the Designation of Record are a part of the record on appeal. Rules 2.5(A)(1)(2), and 3.2(B), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2006). The Designation of Record in this case states in part that the original record shall contain "all motions, applications, notices and requests filed on behalf of the State or the Defendant" and "all documentary exhibits of State, Defendant, and/or Court". Therefore, as the Designation of Record includes the Motion for New Trial and its attached affidavits, those affidavits are properly before this Court. However, as defense counsel merely stood on the motion for new trial and did not provide any argument or evidence in support, it is not clear whether the affidavits had been examined by the trial court. Therefore, the affidavits before this Court were merely *ex parte* and lacked any supporting evidence. This is not an adequate record for this Court to review an alleged error.

13. The Honorable Virgil C. Black, trial judge in the matter, recused from the evidentiary hearing because he was a necessary witness. The Honorable Ray Elliott, District Judge, conducted the evidentiary hearing.

14. These last five witnesses were the same individuals who provided sworn affidavits attached to Appellant's Motion for New Trial filed with the District Court.

ment but the statement did not coerce the jury into reaching a verdict; 4) the defense had not sufficiently raised the presumption of prejudice; and 5) defense counsel was aware of recesses held during deliberations and to the extent defense counsel believed improprieties occurred, counsel had an opportunity to raise a timely objection or otherwise preserve the matter in the record, and the failure to object was a strategic decision.

¶ 96 In his Supplemental Brief following evidentiary hearing, Appellant raises two allegations of error. First, he contends reversal is required because the jury was never properly sequestered for sentencing deliberations pursuant to 22 O.S.2001, § 857. This failure, Appellant argues, denied him a verdict within the meaning of the Sixth Amendment right to jury trial. Appellant explains that while the trial judge testified he took steps to shield the courtroom where the jury deliberated from outside influences, he permitted the jury to separate for various reasons. Appellant asserts testimony at the evidentiary hearing showed that the judge and his staff acknowledged that while jurors were present in his outer office, many other people, including court staff and attorneys were coming and going. Appellant argues that even assuming the trial judge had no direct participation in conversations among jurors and non-jurors, "jurors were inappropriately exposed to an atmosphere of camaraderie and conversation between the judge, lawyers, court staff, and the State's chief witness, going on through deliberations, such that the jurors were never sequestered to decide punishment as required by state law". Appellant also contends the bailiff's conversation with the jury foreperson concerning her doctor's appointment violated § 857 as well as 22 O.S.2001, § 894.

¶ 97 A jury can be sequestered at any time during trial proceedings. Title 22 O.S.2001, § 853 provides that any time after the jurors have been sworn to try the information and before submission of the case to the jury, in the discretion of the court, the jury may be permitted to separate, "or may be kept in charge of proper officers." Before final submission of a case to the jury the burden of proof is on the defense to show sequestration is necessary to prevent the jury's exposure to media reports which could be prejudicial to the defendant. *Price v. State*, 1989 OK CR 74, ¶ 17, 782 P.2d 143, 147; *Matricia v. State*, 1986 OK CR 152, ¶ 9, 726 P.2d 900, 903.

¶ 98 In the present case though we are not concerned with the sequestration of the jury before submission of the case, but only after submission of the case in second stage and during second stage deliberations. Title 22 O.S.2001, § 857 permits keeping the jury together for deliberations, in a private place, in the charge of court officers, "after hearing the charge".[15] This section has been construed as a requirement that the jury not be allowed to "separate" between hearing the charge and returning a verdict. *Bayliss v. State*, 1990 OK CR 51, ¶ 4, 795 P.2d 1079, 1080. *See also Mooney*, 1999 OK CR 34, ¶ 63, 990 P.2d at 892. "If the jury has been sent to deliberate and is then allowed to separate and commingle with people outside their group, prejudice to the defendant is presumed." *Id.* This Court has found "Section 857 is an important statutory provision 'designed to preserve inviolate the right to, and the purity of jury trials' ". *Johnson v. State*, 2004 OK CR 23, ¶ 20, 93 P.3d 41, 47.

¶ 99 The testimony from the evidentiary hearing shows the jury began deliberations just before 3:00 p.m. and continued until it reached a unanimous verdict at 11:15 p.m. During that time, the jury did not stop to eat and did not require an overnight stay in a hotel. Recesses in deliberations were taken for jurors to use the restroom or to smoke. These recesses were infrequent and short in duration. The bailiff admonished the jury to make each recess short and the bailiff was able to monitor the movements of any juror

---

15. Title 22 O.S.2001, § 857 provides:

After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agree without retiring, one or more officers must be sworn to keep them together in some private and convenient place, and not to permit any person to speak to or communicate with them, nor do so themselves, unless it be by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed, or when ordered by the court.

to and from the restroom or to and from the smoking area (the usual jury deliberation room).

¶ 100 Testimony concerning whether the jurors were allowed to commingle with non-jurors during recesses was conflicting. Members of the defense team testified that jurors were smoking in the judge's outer chambers while court staff, Detective Mullenix, and possibly others were present. However, each of the jurors testified their only contact was with court staff. Each juror also testified they did not have any communication or contact with Detective Mullenix. Testimony shows he either excused himself when jurors were about to enter a room he was in or he waited in the judge's private office.

¶ 101 A recess was also taken for the jurors to move their cars due to the closing of the parking garage for the day. Testimony showed the jury was accompanied by the bailiff and deputies when moving their cars. According to the testimony this was a common occurrence for juries in Oklahoma County that deliberated into the evening. The record reflects that either defense counsel was informed when this occurred and did not object, or if not specifically notified, were well aware of situation as the closing time of the parking garage was common knowledge in the courthouse.

¶ 102 Requests for recess or snacks were made by the jury knocking on the door to alert the bailiff to the existence of a note pushed underneath the door. When the bailiff responded, communication was made at the doorway. Snacks were provided to the jury either by the bailiff handing them off to the jury at the doorway or by the bailiff taking them into the room during a recess in deliberations.

¶ 103 Testimony concerning the use of telephones by jurors was conflicting. Two members of the defense team and the court reporter testified to seeing jurors use telephones during deliberations. However, each juror testified their cell phones were confiscated prior to deliberations and denied using a phone during deliberations or seeing any other juror use a phone.

¶ 104 The record is void of any objections by defense counsel to perceived improprieties surrounding the jury's deliberation. It was not until after the verdict was received did defense counsel ask to make a record. At that time, counsel was told by the trial judge that due to the late hour, objections should be raised at the motion for new trial.

¶ 105 This record supports the District Court's finding that the recesses were so infrequent and short in duration that such did not constitute a separation of the jury during deliberations within the meaning of § 857. Further, while evidence of the jurors commingling with non-jurors was conflicting, even assuming there was commingling with non-jurors, the State adequately rebutted any presumption of prejudice as the testimony showed the jury was not exposed to any outside or prejudicial influences during deliberations.

¶ 106 Title 22 O.S.2001, § 894, prohibits communication by the jury with the judge or any third person except in open court. Testimony at the evidentiary hearing shows the foreperson sought medical advice for her broken foot and had to reschedule a doctor's appointment on one occasion due to the length of the trial. She subsequently became concerned that deliberations might require rescheduling a second doctor's appointment and inquired of the bailiff what might be done about it. The bailiff responded that the foreperson should not worry about the appointment because if necessary all the jurors could go with her to the doctor's appointment. The comment was made by the bailiff in jest. She did not take any steps to arrange transportation of the entire jury panel to the doctor's appointment the next day. Further, not all of the jurors heard the comment. Of those who did hear it, they understood it was made in jest and laughed at it. Every juror familiar with the comment testified it did not affect their deliberations or verdict.

¶ 107 Not every communication between the court and jury outside the presence of counsel is prohibited. *Perry v. State*, 1995 OK CR 20, ¶ 26, 893 P.2d 521, 528. Communications with the jury regarding simple housekeeping matters do not give rise

to a statutory violation. *Id.* "Rather, prejudice arises when the trial court communicates with the jury outside the parameters of [the statute.]" *Id.*

¶ 108 As the District Court noted in its findings, "the foreperson asking the bailiff about her doctor's appointment the next morning is a quintessential 'housekeeping' matter". Therefore, it was not inappropriate for the bailiff to discuss the matter with her. The bailiff's response did not relate to the merits of the case, the deliberative process or the verdict nor did it alter the proceedings in any way. *Contra Mooney,* 1999 OK CR 34, ¶ 65, 990 P.2d at 893. The response seems to have been an attempt at levity and does not constitute prejudicial or unauthorized communications under § 894.

¶ 109 Having thoroughly reviewed the record, we find the provisions of § 857 were properly adhered to during second stage deliberations. The jury was separated from any non-jurors, placed under the charge of court officers, and taken to a private room for deliberations. Any contact or communication jurors may have had with non-jurors during recesses in deliberations was incidental and did not expose the jury to outside, prejudicial influences. Based upon the testimony from the evidentiary hearing, we find no statutory or constitutional violations.

 ¶ 110 In the second assignment of error in the supplemental brief, Appellant asserts this Court cannot rely on the jurors' opinions given at the evidentiary hearing regarding the impact of outside influences on their sentencing decision as their testimony was tainted by the trial court's "debriefing" of the jurors after the verdict. Appellant explains the testimony showed that after the jury was released from service in this case, the trial judge conducted an informal discussion with the jury and counsel. The trial judge testified it was a regular practice for him in order to comfort jurors after a trial. Appellant asserts that comments and discussions at this "debriefing" created a bias and prejudice toward him which tainted the ju-

rors' subsequent testimony concerning their sentencing decision. The record reflects defense counsel raised this issue at the evidentiary hearing, but the judge excluded testimony concerning the "debriefing" finding it not relevant to any of the issues he was ordered to address by this Court. Defense counsel was permitted to make a record of the comments allegedly made by the trial judge during the "debriefing". As to several of the jurors, defense counsel made an offer of proof that if permitted to so testify, the jurors would state that post-verdict briefing made him or her feel better about the verdict.

¶ 111 In support of his argument, Appellant relies on case law which states that jurors must be protected from extraneous influences.[16] However, these cases address the issue in terms of preventing exposure to potentially prejudicial influences during deliberations. Appellant argues, however, the reasoning behind the prohibition is just as relevant to the jurors in the present case. We disagree.

¶ 112 The purpose of the evidentiary hearing in this case was to determine, in part, whether the jury was exposed to or influenced by any circumstances outside the deliberation room or by contact or communication with non-jurors. The testimony of each juror was based upon his or her recollection of events occurring during and surrounding second stage deliberations. Appellant has not shown, nor do we find authority for the argument, that a juror's personal feelings toward the judge, Appellant or about the verdict, based upon any event occurring after the delivery of the verdict, including the trial court's "debriefing" of the jury, had any relevance to the juror's veracity or ability to testify regarding the existence of any outside influences upon his or her verdict. Appellant has not shown, nor does the record support a finding, that the jurors were improperly influenced so as to render their testimony during the evidentiary hearing inadmissible and this Court's reliance on the District Court's

---

16. *See Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), *Farese v. United States,* 428 F.2d 178 (5th Cir.1970). *See also Palestroni v. Jacobs,* 10 N.J.Super. 266, 77 A.2d

183 (1950). Appellant also cites to *Eisenberg, Garvey, Wells, Jury Responsibility in Capital Sentencing: An Empirical Study,* 44 Buff.L.Rev. 339, 372 (1996).

findings of fact and conclusions of law inappropriate.

¶ 113 Based upon the foregoing, and after a thorough review of the record before us, including the transcripts, supplemental brief,[17] and findings of the District Court, we find Appellant is not entitled to relief on his first assignment of error. The record clearly shows the jury did not separate during second stage deliberations within the meaning of § 857 and were not exposed to any outside prejudicial communication or influences within the meaning of §§ 857 and 894.

■ ¶ 114 Further, the record shows defense counsel's failure to raise any objection did not constitute ineffective assistance of counsel under the dictates of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defense counsel testified at the evidentiary hearing they learned of alleged commingling between jurors and non-jurors and the communication between the bailiff and the foreperson regarding the doctor's appointment prior to the return of the verdict. The record reflects counsel had several opportunities to raise an objection. Counsel testified that after observing the jury during deliberations for a time, they left the courthouse for their offices where the each took time to research the issue of jury separation and attempted to contact other members of the Public Defender's Office. The record also shows both attorneys for the defense were experienced trial lawyers. Further, based upon a previous trial involving essentially the same issue, the same trial judge, and the same first chair defense counsel, counsel understood the process and procedures to preserve any necessary record. When counsel did make an objection, it was only through one paragraph in the motion for new trial and attached affidavits. Counsel did not take the opportunity to argue the motion or specifically draw the court's attention to the issue.

¶ 115 Based upon this record, we agree with the conclusion of the District Court that counsel's decision not to object was a strategic decision based upon the lack of supporting facts and/or case law. Further, based upon the foregoing discussion any objection would have been overruled. Therefore, counsel's failure to object at trial does not render the result of the trial unreliable or render counsel ineffective. *Phillips v. State*, 1999 OK CR 38,¶ 104, 989 P.2d 1017, 1044; *Workman v. State*, 1991 OK CR 125, ¶ 19, 824 P.2d 378, 383. Accordingly, Appellant's first assignment of error is denied.

■ ¶ 116 Appellant contends in his seventh assignment of error that his death sentence is disproportionate to the crime of child abuse murder as there was no finding he intended harm, let alone caused death. In *Wisdom v. State*, 1996 OK CR 22, ¶ 40, 918 P.2d 384, 395, *cert. denied*, 528 U.S. 1020, 120 S.Ct. 529, 145 L.Ed.2d 410 (1999), we held that a defendant convicted of First Degree Murder by Child Abuse who actually killed the victim by his/her own hand was eligible for the death sentence, and that an *Enmund/Tison*[18] analysis does not apply in the case of the actual killer. Appellant acknowledges this ruling but urges reconsideration. We decline the offer. *See Abshier v. State*, 2001 OK CR 13, ¶ 48, 28 P.3d 579, 608 [19]; *Gilson*, 2000 OK CR 14, ¶ 127, 8 P.3d at 919; *Fairchild*, 1999 OK CR 49, 998 P.2d at 631. *See also Workman v. Mullin*, 342 F.3d 1100, 1114–15 (10th Cir.2003) (*Enmund/Tison* analysis is not required under the Eighth Amendment in a child abuse murder conviction where the defendant actually killed his victim). Here, the evidence supports a finding that Appellant actually killed the victim. This evidence certainly renders Appellant eligible for the death sentence. Accordingly, the assignment of error is denied.

### AGGRAVATING CIRCUMSTANCES

¶ 117 In his thirteenth assignment of error, Appellant asserts his death sentence should

---

**17.** The State did not file a response to Appellant's supplemental brief after evidentiary hearing.

**18.** *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987); *Enmund v. Flori-*da, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

**19.** *Overruled on other grounds, Jones v. State*, 2006 OK CR 17, 134 P.3d 150.

be vacated because error relating to the aggravating circumstances violated his constitutional rights. Initially, Appellant addresses the standard of review applied by this Court in reviewing the sufficiency of the evidence supporting the aggravating circumstances. Appellant asserts that on occasion this Court has incorrectly applied the "any competent evidence" standard. He requests we use the "rational fact finder" test of *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

¶ 118 The "rational fact finder" test of *Jackson* was adopted by this Court in, *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203–204, for reviewing challenges to the sufficiency of the evidence supporting a conviction. Under that test, we review the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt.

¶ 119 Similarly, to determine whether the State has met its burden in proving an aggravating circumstance, this Court reviews the record in the light most favorable to the State to determine whether any rational trier of fact could have found the facts necessary to support the aggravating circumstance beyond a reasonable doubt. *Lockett v. State*, 2002 OK CR 30, ¶ 39, 53 P.3d 418, 430, *cert. denied*, 538 U.S. 982, 123 S.Ct. 1794, 155 L.Ed.2d 673 (2003); *Washington v. State*, 1999 OK CR 22, ¶ 44, 989 P.2d 960, 974; *Le v. State*, 1997 OK CR 55, ¶ 32, 947 P.2d 535, 551, *cert. denied*, 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998); *Fields v. State*, 1996 OK CR 35, ¶ 67, 923 P.2d 624, 637, *cert. denied*, 520 U.S. 1216, 117 S.Ct. 1704, 137 L.Ed.2d 829 (1997); *Medlock v. State*, 1994 OK CR 65, ¶ 52, 887 P.2d 1333, 1348; *cert. denied*, 516 U.S. 918, 116 S.Ct. 310, 133 L.Ed.2d 213 (1995); *Fisher v. State*, 1987 OK CR 85, ¶ 25, 736 P.2d 1003, 1011 (Okl.Cr. 1987), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988).

¶ 120 We have also phrased the standard of review as whether there was any competent evidence to support the State's charge

that the aggravating circumstance existed. *Lott v. State*, 2004 OK CR 27, ¶ 116, 98 P.3d 318, 348, *cert. denied*, 544 U.S. 950, 125 S.Ct. 1699, 161 L.Ed.2d 528 (2005); *Abshier*, 2001 OK CR 13, ¶¶ 156–157, 28 P.3d at 610; *Stemple v. State*, 2000 OK CR 4, ¶ 64, 994 P.2d 61, 73, *cert. denied*, 531 U.S. 905, 121 S.Ct. 247, 148 L.Ed.2d 178 (2000); *Pennington v. State*, 1995 OK CR 79, ¶ 63, 913 P.2d 1356, 1370; *Perry v. State*, 1995 OK CR 20, ¶ 53, 893 P.2d 521, 533; *Bryson v. State*, 1994 OK CR 32, ¶ 52, 876 P.2d 240, 259, *cert. denied*, 513 U.S. 1090, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995); *Romano v. State*, 1993 OK CR 8, ¶ 79, 847 P.2d 368, 387 (Okl.Cr.1993), *cert. granted and case aff'd; Romano v. Oklahoma*, 512 U.S. 1, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994); *Brogie v. State*, 1985 OK CR 2, ¶ 10, 695 P.2d 538, 542, *modified on other grounds*, 1988 OK CR 160, 760 P.2d 1316.

¶ 121 The two phrases have been combined in several cases. *Malicoat v. State*, 2000 OK CR 1, ¶¶ 16, 20, 992 P.2d 383, 397, *cert. denied*, 531 U.S. 888, 121 S.Ct. 208, 148 L.Ed.2d 146 (2000); *Alverson v. State*, 1999 OK CR 21, ¶ 49, 983 P.2d 498, 515, *cert. denied*, 528 U.S. 1089, 120 S.Ct. 820, 145 L.Ed.2d 690 (2000); *Salazar v. State*, 1996 OK CR 25, ¶ 7, 919 P.2d 1120, 1123; *Valdez*, 1995 OK CR 18, ¶ 69, 900 P.2d at 382.

¶ 122 While phrased two different ways, we find this Court has consistently used only one standard of review. *See Salazar*, 1996 OK CR 25, ¶ 7, 919 P.2d at 1123. Our cases show that this Court's review of the sufficiency of the evidence supporting aggravating circumstances has been consistent with the Eighth Amendment's guarantee against the arbitrary or capricious imposition of the death penalty. U.S. Const. amends. VIII, XIV; *Lewis v. Jeffers*, 497 U.S. 764, 781–83, 110 S.Ct. 3092, 3102–3104, 111 L.Ed.2d 606, 623–24 (1990). Therefore, we continue to treat the differing phraseology as one standard of review and apply that standard of review in the instant case.

¶ 123 Appellant next raises several challenges to the "continuing threat" [20] ag-

---

**20.** 21 O.S.1991, § 701.12(7) ("the existence of a

probability that the defendant would commit

gravator. First, he argues it was error for the State to present evidence of unadjudicated crimes and bad acts. Further, he asserts the State's reliance on the uncharged vaginal rape was fundamentally unfair and violated his right to due process based on insufficient notice. This Court has consistently upheld the use of unadjudicated crimes to prove the "continuing threat" aggravating circumstance. *Williams v. State*, 2001 OK CR 9, ¶ 70, 22 P.3d 702, 720, *cert. denied*, 534 U.S. 1092, 122 S.Ct. 836, 151 L.Ed.2d 716 (2002); *Malicoat*, 2000 OK CR 1, ¶ 18, 992 P.2d at 397; *Salazar*, 1998 OK CR 70, ¶ 46, 973 P.2d at 328–329; *Berget v. State*, 1991 OK CR 121, ¶ 53, 824 P.2d 364, 377, *cert. denied*, 506 U.S. 841, 113 S.Ct. 124, 121 L.Ed.2d 79 (1992). We decline Appellant's request to revisit the issue.

¶ 124 In the Second Amended Bill of Particulars, the State alleged that the victim had "petechiae around the urethral opening . . . consistent with blunt object penetration". While the notice need not contain every detail, "it must contain the essential point(s), statement(s), or fact(s) and the main element(s) of the evidence the State intends to introduce to prove the aggravating circumstances alleged so the accused can prepare and present a defense or explanation." *Littlejohn v. State*, 2004 OK CR 6, ¶ 16, 85 P.3d 287, 295, *cert. denied*, 543 U.S. 947, 125 S.Ct. 358, 160 L.Ed.2d 261 (2004). Although brief, this language was sufficient to put Appellant on notice that the State would present evidence of the attempted vaginal rape. *See Williams*, 2001 OK CR 9, ¶ 52, 22 P.3d at 717; *Miller v. State*, 1998 OK CR 59, ¶ 65, 977 P.2d 1099, 1112, *cert. denied*, 528 U.S. 897, 120 S.Ct. 228, 145 L.Ed.2d 192 (1999). Further, this was Appellant's third trial. By this time in the proceedings, Appellant was well aware of the evidence to be used in support of the aggravators.

¶ 125 Appellant requests we reconsider our prior decisions rejecting vagueness challenges to the aggravator. *See Williams*, 2001 OK CR 9, ¶ 82, 22 P.3d at 722–23; *Short v. State*, 1999 OK CR 15, ¶ 69, 980 P.2d 1081, 1103, *cert. denied*, 528 U.S. 1085, 120 S.Ct. 811, 145 L.Ed.2d 683 (2000); *Douglas v.*

*State*, 1997 OK CR 79, ¶ 98, 951 P.2d 651, 677, *cert. denied*, 525 U.S. 884, 119 S.Ct. 195, 142 L.Ed.2d 159 (1998); *Hamilton v. State*, 1997 OK CR 14, ¶ 47, 937 P.2d 1001, 1012, *cert. denied*, 522 U.S. 1059, 118 S.Ct. 716, 139 L.Ed.2d 657 (1998); *Pennington*, 1995 OK CR 79, ¶ 85, 913 P.2d at 1373; *Walker v. State*, 1994 OK CR 66, ¶ 66, 887 P.2d 301, 320, *cert. denied*, 516 U.S. 859, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995). The United States Supreme Court and the Tenth Circuit Court of Appeals have also consistently rejected the contention. See *Tuilaepa v. California*, 512 U.S. 967, 976–977, 114 S.Ct. 2630, 2637–2638, 129 L.Ed.2d 750 (1994); *LaFevers v. Gibson*, 182 F.3d 705, 720 (10th Cir.1999); *Nguyen v. Reynolds*, 131 F.3d 1340, 1354 (10th Cir. 1997). Appellant's argument for reconsideration is not persuasive and we find no reason to overturn our prior case law.

¶ 126 Finally, Appellant challenges the sufficiency of the evidence to support the aggravator in this case. To support the aggravator of "continuing threat", the State must present evidence showing the defendant's behavior demonstrated a threat to society and a probability that threat would continue to exist in the future. *Bland v. State*, 2000 OK CR 11, ¶ 135, 4 P.3d 702, 735, *cert. denied*, 531 U.S. 1099, 121 S.Ct. 832, 148 L.Ed.2d 714 (2001). A finding that the defendant would commit criminal acts of violence that would constitute a continuing threat to society is appropriate when the evidence establishes the defendant participated in other unrelated criminal acts and the nature of the crime exhibited the calloused nature of the defendant. *Id.* To prove this aggravating circumstance, this Court has held the State may present any relevant evidence, in conformance with the rules of evidence, including evidence from the crime itself, evidence of other crimes, admissions by the defendant of unadjudicated offenses or any other relevant evidence. *Id.*

¶ 127 The State's evidence showed that in addition to the evidence of the rape and murder of the victim, Appellant had physically abused and attempted to vaginally rape the victim shortly before her death. The

criminal acts of violence that would constitute a continuing threat to society'').

State's evidence also showed Appellant had physically abused Vonnita Warner; that on more than one occasion Appellant had choked and beat his ex-wife Vonricca Warner while she was pregnant with Vonnita; and other occasions he had thrown his ex-wife to the ground, thrown her up against a wall in their home, and forced her to have sexual relations with him against her will. This evidence shows a pattern of escalating violent conduct that supports the jury's finding of the probability of future dangerousness, which constitutes a continuing threat to society.

¶ 128 Appellant argues the victim's death was the result of a domestic altercation. He contends the "continuing threat" aggravator should not apply where the only supporting evidence comes from a domestic situation which he will be removed from once he is in prison. As support for his argument, Appellant relies in part on *Lewis v. State,* 1998 OK CR 24, 970 P.2d 1158, *Cheney v. State,* 1995 OK CR 72, 909 P.2d 74, and *Hogan v. State,* 1994 OK CR 41, 877 P.2d 1157. These cases are distinguishable from the present case as the "continuing threat" aggravator was alleged but not found by the jury in those trials. Appellant also argues that in cases where the jury found the aggravator, this Court upheld that finding by relying on other more compelling evidence.[21] Appellant's comparison of his case to others does not convince us that the "continuing threat" aggravator should not apply in this case. The evidence in this case was sufficiently "compelling". This case was more than a mere domestic altercation. Evidence that Appellant raped and murdered an 11 month old infant, and that in the past he had beaten a four year old child and choked and beaten his ex-wife was sufficient to support a finding that Appellant is a "continuing threat" to society and that his violent nature escalated from assault to homicide.

¶ 129 Appellant next challenges the "especially heinous, atrocious or cruel"[22]

aggravator. To prove this aggravator, the State must show that the murder of the victim was preceded by torture or serious physical abuse, which may include the infliction of either great physical anguish or extreme mental cruelty. *Lott,* 2004 OK CR 27, ¶ 172, 98 P.3d at 358; *Banks v. State,* 2002 OK CR 9, ¶ 36, 43 P.3d 390, 400–401; *cert. denied,* 537 U.S. 1126, 123 S.Ct. 898, 154 L.Ed.2d 811 (2003); *Black v. State,* 2001 OK CR 5, ¶ 79, 21 P.3d 1047, 1074, *cert. denied,* 534 U.S. 1004, 122 S.Ct. 483, 151 L.Ed.2d 396 (2001); *Short,* 1999 OK CR 15, ¶ 99, 980 P.2d at 1109; *Hain v. State,* 1996 OK CR 26, ¶ 36, 919 P.2d 1130, 1146, *cert. denied,* 519 U.S. 1031, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996). Serious physical abuse requires evidence of conscious physical suffering. *DeRosa v. State,* 2004 OK CR 19, ¶ 96, 89 P.3d 1124, 1157, *cert. denied,* 543 U.S. 1063, 125 S.Ct. 889, 160 L.Ed.2d 793 (2005), *Hooks v. State,* 2001 OK CR 1, ¶ 39, 19 P.3d 294, 314, *cert. denied,* 534 U.S. 963, 122 S.Ct. 371, 151 L.Ed.2d 282 (2001); *Spears v. State,* 1995 OK CR 36, ¶ 78, 900 P.2d 431, 448–449, *cert. denied,* 516 U.S. 1031, 116 S.Ct. 678, 133 L.Ed.2d 527 (1995).

¶ 130 Appellant argues the evidence was insufficient to prove the victim's "conscious physical suffering" as the medical examiner could not determine in which order the injuries were inflicted and because the head injury would have resulted in immediate loss of consciousness, and there was nothing to indicate the victim consciously suffered pain. Further, he asserts the absence of any evidence that the victim cried out in pain supports his argument.

¶ 131 The medical evidence concerning when the victim would have lost consciousness was conflicting. Dr. Choi testified the autopsy revealed a violent shaking and crushing-type force caused the victim's injuries. On cross-examination, she said she could not determine which injury, to the victim's head, chest, liver or abdomen, happened first. She said the head injury would

**21.** *See Robedeaux,* 1993 OK CR 57, ¶ 84, 866 P.2d at 436; *Malicoat,* 2000 OK CR 1, ¶¶ 16–19, 992 P.2d at 396–398; *Hooper v. State,* 1997 OK CR 64, ¶¶ 43–44, 947 P.2d 1090, 1107–08; *Cummings v. State,* 1998 OK CR 45, ¶ 52, 968 P.2d

821, 836–837; *Nguyen v. State,* 1988 OK CR 240, ¶ 35, 769 P.2d 167, 174; *Darks,* 1998 OK CR 15, ¶¶ 40–41, 954 P.2d at 163.

**22.** 21 O.S.1991, § 701.12(4).

not result in the immediate loss of consciousness. She stated her overall impression was that the victim was injured then she rapidly lost consciousness. Dr. Choi said she could not put an exact time frame on the occurrence of the events. On cross-examination, Dr. Choi admitted that at Appellant's previous trial, she testified that it was more likely that the victim lost consciousness at the same time the injuries were received.

¶ 132 Dr. Spencer testified that in reviewing photos of the victim's injuries, the injuries were consistent with shaken baby syndrome. She said the injuries to the victim's anal area were consistent with a firm object being violently placed there. She did not give an opinion as to whether the victim lost consciousness. Charvon Warner testified he saw Appellant shake the victim the day she died. Scared of Appellant, Charvon said he then hid in his sister's room. Additionally, in Appellant's interview with Officer Ballard, Appellant said while Shonda was at the store, he was in the bedroom with the victim and Dashja. He said he left the room only to return to find the victim lying on the floor crying. Defense witness Phillip Nowicki, a professor of pediatrics at Ohio State University, testified that after reviewing the victim's medical records, he believed she would have lost consciousness immediately upon sustaining the head injury.

¶ 133 The jury is the exclusive judge of the weight and credibility of the evidence. *Robedeaux*, 1993 OK CR 57, ¶ 43, 866 P.2d at 429. Despite conflicts in the evidence, this Court will not disturb the jury's finding if there is competent evidence to support it. *Id.* Reviewing the evidence in the light most favorable to the State, the evidence is sufficient to support the jury's finding that the victim consciously suffered pain from the anal rape and violent shaking at Appellant's hands prior to her death. *See Revilla*, 1994 OK CR 24, ¶ 44, 877 P.2d at 1155.

¶ 134 Appellant further argues that contributing to the invalidity of this aggravator is the erroneous omission of the word "physical" from the phrase "serious physical abuse" in the last sentence of Oklahoma Uniform Jury Instruction—Criminal (2d) (OUJI–CR)

4–73. Such an omission in the uniform instruction has been found error but harmless as it does not alter the standard of proof, and thus could have had no impact on the sentencing decision. *See Johnson v. State,* 1996 OK CR 36, ¶ 42, 928 P.2d 309, 318, *cert. denied,* 522 U.S. 832, 118 S.Ct. 99, 139 L.Ed.2d 54 (1997).

¶ 135 The record reflects no objection was raised to the instruction given in this case regarding the "especially heinous, atrocious or cruel" aggravator. Appellant's failure to object waives all but plain error. "In this sensitive area of capital sentencing, we are constrained to find deviation from the well-established and constitutionally firm instruction is error". *Id.* However, as in *Johnson,* we are not persuaded "that the error dramatically lessened, or indeed lessened at all the standard of proof which the jury had to apply to find this aggravator" *Id.See also Myers v. State,* 2000 OK CR 25, ¶¶ 75–78, 17 P.3d 1021, 1037–38, *cert. denied,* 534 U.S. 900, 122 S.Ct. 228, 151 L.Ed.2d 163 (2001); *Miller v. State,* 1998 OK CR 59, ¶ 68, 977 P.2d 1099, 1112–1113, *cert. denied,* 528 U.S. 897, 120 S.Ct. 228, 145 L.Ed.2d 192 (1999); *Turrentine v. State,* 1998 OK CR 33, ¶ 67, 965 P.2d 955, 975; *cert. denied,* 525 U.S. 1057, 119 S.Ct. 624, 142 L.Ed.2d 562 (1998); *Richie v. State,* 1995 OK CR 67, ¶ 43, 908 P.2d 268, 278–279, *cert. denied,* 519 U.S. 837, 117 S.Ct. 111, 136 L.Ed.2d 64 (1996).

¶ 136 Having thoroughly reviewed Appellant's challenges to the two aggravating circumstances found by the jury in this case, we find both aggravators pass constitutional muster and were supported by sufficient evidence. Accordingly, this assignment of error is denied.

¶ 137 In his fourteenth assignment of error, Appellant asserts his death sentence must be vacated under the Court's mandatory sentence review of 21 O.S.2001, § 701.13(C). Specifically, he argues his sentence was imposed under the influence of passion, prejudice, or arbitrary factors; the mitigation outweighed the aggravation; and his execution would violate the Eighth Amendment prohibition against cruel and unusual punishment.

¶ 138 In support of his first claim Appellant argues his sentence was imposed under the influence of passion, prejudice, or other arbitrary factors including but not limited to the errors raised in Propositions I, V, VII—IX, XI–XIII, and XV—XVII of his appellate brief. As discussed in these propositions of error herein, Appellant's allegations do not warrant reversal or modification of his judgment and sentence. While certain errors did occur in this case, when considered individually or cumulatively, they were not so egregious or numerous as to have denied Appellant a fair trial.

¶ 139 Next, Appellant asserts the mitigation evidence outweighed the aggravating circumstances. He also finds the trial court erred in failing to instruct the jury that its determination that aggravation outweighs mitigation must be beyond a reasonable doubt, and in failing to instruct the jury on the presumption of life.

¶ 140 Specific standards for balancing aggravating and mitigating circumstances are not constitutionally required. *Romano v. State*, 1993 OK CR 8, ¶ 111, 847 P.2d 368, 392, *citing Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). The "beyond a reasonable doubt" burden of proof analysis is not strictly applicable to the weighing process of the second stage. *Id.*, at ¶ 112. "While the State must prove beyond a reasonable doubt the existence of at least one of the enumerated aggravating circumstances, the determination of the weight to be accorded the aggravating and mitigating circumstances is not a fact which must be proved beyond a reasonable doubt. Instead, it is a balancing process." *Id. citing Johnson v. State*, 1987 OK CR 8, ¶ 44, 731 P.2d 993, 1005.

¶ 141 Further, in *Torres v. State*, 2002 OK CR 35, ¶¶ 6–7, 58 P.3d 214, 215, *cert. denied*, 525 U.S. 1082, 119 S.Ct. 826, 142 L.Ed.2d 683 (1999), we found this procedure satisfied the constitutional requirements set forth in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), as it is the responsibility of the jury to unanimously find any aggravating circumstance beyond a reasonable doubt. *Id. See also Pickens v. State*, 2003 OK CR 16,

¶¶ 5–6, 74 P.3d 601, 602–603. Appellant's argument to reconsider is not persuasive.

¶ 142 Further, we find no error in the trial court's refusal to instruct the jury on the "presumption of life". This Court has not required such an instruction. *See Frederick v. State*, 2001 OK CR 34, ¶ 174, 37 P.3d 908, 951, fn. 13; *Duckett v. State*, 1995 OK CR 61, ¶ 63, 919 P.2d 7, 23–24, *cert. denied*, 519 U.S. 1131, 117 S.Ct. 991, 136 L.Ed.2d 872 (1997); *Fox v. State*, 1989 OK CR 51, ¶ 49, 779 P.2d 562, 574, *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990). The instructions given in this case concerning sentencing and legally recognized presumptions adequately advised the jury of the appropriate law.

¶ 143 Turning to the mitigating evidence, Appellant presented thirteen (13) witnesses in his behalf. These witnesses included his mother, father, brother, sister, and cousin. Additionally, the mother, aunt, and grandmother of his daughter Dashja testified as well as two people who described themselves as friends, two others who said they were neighbors and one who said he had rented a house to Appellant. Essentially, these witnesses testified they loved and cared for Appellant and his life had meaning and significance to them; he was a loving son and father and wanted to be the type of father that he did not have; he read books to his children and taught them the alphabet; he tried to teach his son to be responsible and helped him with his homework; he sought and was awarded custody by default of his children Charvon and Vonnita; he worked with his handicapped daughter Vonnita, taught her to walk and took her to medical appointments; he was not easily angered; he cared for his grandmother after her surgery; he had no prior felony convictions and had never been in trouble with the law except for traffic tickets; he does not use drugs or alcohol; his children were observed not to be scared of him; he would let his brother and sister eat first; he remembers family birthdays and holidays; and he was a good football player who encouraged and supported his younger brother to play football.

¶ 144 Additional mitigation evidence showed Appellant was a loyal friend who gave a friend rides to work; he was a good neighbor and good tenant; he kept his house in good repair; he was trying to improve his life by making plans for school, a job, and had borrowed some motivational tapes; he was never seen to hit or abuse his children; he caught his daughter Dashja in the street before she was run over by a car; no criminal charges have ever been filed against him for any allegations made by Vonricca Warner; he took the victim to the emergency room to obtain medical attention; and he is capable of making a contribution to society. This evidence was summarized into twenty-two (22) factors and submitted to the jury for their consideration as mitigating evidence, as well as any other circumstances the jury might find existing or mitigating. (O.R. 1078–1081).

¶ 145 Upon our review of the record and careful weighing of the aggravating circumstances (previously found supported by sufficient evidence) and the mitigating evidence, we find the sentence of death to be factually substantiated and appropriate.

¶ 146 Appellant next argues his execution would be cruel and unusual punishment as "Oklahoma's use of the muscle relaxant pancuronium bromide may render a person helpless without dulling pain". Appellant further states that "used in about 30 states in combination with two other drugs that cause death, the drug may leave inmates awake as other drugs cause them to suffocate slowly". In support of his argument, Appellant relies on articles from CBS News and the New York Times attached to his Motion for a Rule 3.11 hearing.

¶ 147 Lethal injection has been an authorized method of execution in Oklahoma since 1977. *See* 22 O.S.2001, § 1014. This Court has not previously addressed on direct appeal a challenge to this State's lethal injection protocol. Research yields few challenges to other states' protocols for lethal injection. In *Cooper v. Rimmer*, 379 F.3d 1029 (9th Cir.2004), the Ninth Circuit Court of Appeals rejected a challenge to California's protocol, which involved the use of pancuronium bromide. The California protocol used two other chemicals in combination with the pancuronium bromide.[23] The Ninth Circuit found that "[w]hile there can be no guarantee that error will not occur, *Cooper* falls short of showing that he is subject to an unnecessary risk of unconstitutional pain or suffering such that his execution by lethal injection under California's protocol must be restrained." 379 F.3d at 1033.

¶ 148 In the present case, Appellant has not provided this Court with a sufficient record and legal argument to allow us to appropriately address the issue. *See* Rule 3.5(C), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2006). *See also Standridge v. State*, 1985 OK CR 64, ¶ 18, 701 P.2d 761, 764 (appellant has duty to include supporting facts in the record). He has not set out the lethal injection protocol used by this State. The record does not reflect whether Oklahoma's protocol is similar or different to that used in California. Appellant's claim of an Eighth Amendment violation based upon reference to pancuronium bromide and "two other drugs" and supported by articles from the news media, is speculative at best. Accordingly, this claim of error is denied.

## VICTIM IMPACT TESTIMONY

¶ 149 Appellant asserts in his fifteenth assignment of error that the victim impact statement unduly emphasized and addressed only the emotional impact of the victim's death and that its probative value was substantially outweighed by the danger of unfair prejudice. Appellant also argues the trial court failed to follow the procedures for admission of victim impact testimony set out in *Cargle*, 1995 OK CR 77, ¶¶ 65–81, 909 P.2d at 824–830. Finally, he argues the victim impact evidence in this case violated the Eighth and Fourteenth Amendments by upsetting the balance of aggravating and mitigating evidence and skewing the results of Okla-

---

**23.** California uses a combination of three chemicals to carry out an execution by lethal injection: sodium pentothal, a barbiturate sedative; pancu- ronium bromide, a neuromuscular blocking agent; and potassium chloride, which stops the heart. *Cooper*, 379 F.3d at 1031.

homa's sentencing scheme, and that the evidence operated as a "super aggravator". He contends the victim impact testimony also violated his due process rights under the Fifth and Fourteenth Amendments of the United States Constitution and Article II, § 7 of the Oklahoma Constitution as the jury's verdict of death does not meet the heightened standards of reliability required in capital cases.

¶ 150 Victim impact evidence is constitutionally acceptable unless "it is so unduly prejudicial that it renders the trial fundamentally unfair. . . ." *Phillips v. State,* 1999 OK CR 38, ¶ 95, 989 P.2d 1017, 1042, *quoting Payne v. Tennessee,* 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720, 735 (1991). In *Cargle,* 1995 OK CR 77, ¶¶ 67–71, 909 P.2d at 827–28, we set out the analysis the United States Supreme Court utilized to find the Eighth Amendment is not violated by victim impact evidence and that the Fourteenth Amendment has the potential to be implicated if appropriate restrictions are not placed on victim impact evidence. In *Ledbetter v. State,* 1997 OK CR 5, ¶ 53, 933 P.2d 880, 889–90 this Court held victim impact evidence admissible as long as it is restricted to the financial, emotional, psychological, and physical effects, or impact, of the crime itself on the victim's survivors; as well as some personal characteristics of the victim, citing 22 O.S.Supp.1993, § 984. *See also Short,* 1999 OK CR 15, ¶ 53, 980 P.2d at 1100.

¶ 151 In the present case, Shonda Waller was the only victim impact witness. Her victim impact testimony was a statement she had written and read at Appellant's first trial in 1999. Although the statement had been scrutinized by court and counsel at the first trial, because different attorneys were involved in the current trial, the judge reread the statement and asked for objections. Defense counsel argued the statement focused on the emotional impact to the exclusion of all other factors, and therefore the statement violated *Cargle.* The judge and all counsel went over the statement line by line with defense counsel pointing out specific objectionable statements. Upon agreement of all counsel, certain statements were deleted. Defense counsel then moved to have a

hearing on the sufficiency of the aggravators prior to admission of the victim impact testimony. The court agreed but put Shonda Waller on the witness stand first.

¶ 152 A substantial portion of Ms. Waller's victim impact testimony addressed the emotional and psychological toll the victim's murder caused in her life. However, this is understandable given that the victim was only eleven months old at the time of her death. The victim impact evidence in this case comes close to weighting the scales too far on the side of the prosecution by so intensely focusing on the emotional impact of the victim's death. However, taken as a whole, the testimony was within the bounds of admissible evidence set forth in *Cargle* and § 984. The focus on emotion did not have such a prejudicial effect or so skew the presentation as to divert the jury from its duty to reach a reasoned moral decision on whether to impose the death penalty. *See DeRosa,* 2004 OK CR 19, ¶¶ 78–79, 89 P.3d at 1151; *Murphy,* 2002 OK CR 24, ¶ 46, 47 P.3d 876, 885; *Phillips,* 1999 OK CR 38, ¶ 100, 989 P.2d at 1043. The most objectionable comments were deleted at defense counsel's request. Ms. Waller's testimony was brief, comprising approximately two pages of the trial transcript. While the transcript indicates that at one point, Ms. Waller cried during her testimony, she was able to compose herself and finish her testimony. Further, the jury was informed in their second stage instructions on the appropriate weight and consideration to be given victim impact evidence. *See Cargle,* 1995 OK CR 77, ¶ 77, 909 P.2d at 828–829. Under these circumstances, the jury was not prevented from fulfilling its function of making a reliable sentencing determination despite the emotional focus of the victim impact evidence.

¶ 153 Appellant also finds error in the trial court's failure to make a finding of the existence of at least one aggravating circumstance prior to the presentation of the victim impact evidence pursuant to *Cargle,* During the *in-camera* hearing on the victim impact evidence, defense counsel requested such a hearing. The trial court agreed to the hearing but wanted to put Ms. Waller on the stand first. After Ms. Waller's testimony,

the record does not reflect a hearing was held.

¶ 154 Under *Cargle*, the trial court must find that evidence of at least one aggravating circumstance is present before admitting victim impact evidence. 1995 OK CR 77, ¶ 76, 909 P.2d at 828. However, the failure of a trial court to specifically state such a finding is not reversible error. *See Hooks*, 2001 OK CR 1, ¶ 35, 19 P.3d at 313.

¶ 155 Here, Shonda Waller was the last witness presented by the prosecution during the second stage of trial. Evidence supporting the alleged aggravating circumstances had already been presented. As discussed above, sufficient evidence was presented for the jury to find the existence of each of the aggravators beyond a reasonable doubt. The trial court's admission of the victim impact evidence was an implicit admission that the aggravators were sufficiently supported to allow admission of victim impact testimony. While the better practice is for the trial court to make its finding of the aggravators on the record, Appellant has failed to show how he was prejudiced by the court's omission in this case. Accordingly, we find the trial court's failure to explicitly find evidence of at least one aggravating circumstance before admitting victim impact evidence was harmless error.

¶ 156 Further, Appellant's claims that victim impact evidence operates as "super aggravator" that will always be present in every capital case has been repeatedly rejected by this Court. *See DeRosa*, 2004 OK CR 19, ¶ 83, 89 P.3d at 1152–1153; *Hooks*, 2001 OK CR 1, ¶ 38, 19 P.3d at 313–314; *Douglas v. State*, 1997 OK CR 79, ¶ 82, 951 P.2d 651, 675, *cert. denied*, 525 U.S. 884, 119 S.Ct. 195, 142 L.Ed.2d 159 (1998); *Cargle*, 1995 OK CR 77, ¶ 75, 909 P.2d at 828 fn. 15. We see no reason to revisit the issue here.

¶ 157 Having thoroughly reviewed Appellant's challenges to the victim impact evidence, we find its admission did not prevent the jury from making a reasoned moral decision on the imposition of the death penalty. Accordingly, this assignment of error is denied.

¶ 158 In his sixteenth assignment of error, Appellant asks this Court to reconsider whether previously adjudicated issues violated his right to a fair trial, an impartial jury, due process and a reliable sentencing proceeding under the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Article II, §§ 7, 9, 19, 20 and 21 of the Oklahoma Constitution. Appellant first raises as error the trial court's failure to define "life without parole" to the jury. Appellant recognizes this Court has rejected similar arguments. *See Murphy*, 2002 OK CR 24, ¶ 52, 47 P.3d at 886–888 (this Court has, in numerous instances, stated that the meaning of life without parole is self-explanatory and that an instruction on its meaning is not required). *See also Powell v. State*, 2000 OK CR 5, ¶ 127, 995 P.2d 510, 536, *cert. denied*, 531 U.S. 935, 121 S.Ct. 321, 148 L.Ed.2d 258 (2000); *Howell v. State*, 1998 OK CR 53, ¶ 6, 967 P.2d 1221, 1224, *cert. denied*, 528 U.S. 834, 120 S.Ct. 93, 145 L.Ed.2d 79 (1999); *Hamilton v. State*, 1997 OK CR 14, ¶ 44, 937 P.2d 1001, 1011–12, *cert. denied*, 522 U.S. 1059, 118 S.Ct. 716, 139 L.Ed.2d 657 (1998); *McCracken v. State*, 1994 OK CR 68, ¶ 49, 887 P.2d 323, 334, *cert. denied*, 516 U.S. 859, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995). However, in light of *Littlejohn*, 2004 OK CR 6, ¶¶ 4–11, 85 P.3d at 291–294 and *Mollett v. Mullin*, 348 F.3d 902, 905–12 (10th Cir.2003), Appellant asks for reconsideration of the issue.

¶ 159 Concerned about the possibility of a recurring misconception within Oklahoma juries regarding the effective application of a sentence of life imprisonment without the possibility of parole, and whether that casts doubt on our premise that the punishment options are self-explanatory, this Court in *Littlejohn* attempted to give the trial courts guidance in their responses to the jury. Consistent with prior case law, this Court stated:

... in future cases where the jury during deliberations asks, in some form or fashion, whether an offender who is sentenced to life imprisonment without the possibility of parole is parole eligible, the trial court should either refer the jury back to the instructions, tell the jury that the punish-

ment options are self explanatory, or advise the jury that the punishment options are to be understood in their plain and literal sense and that the defendant will not be eligible for parole if sentenced to life imprisonment without the possibility of parole.

2004 OK CR 6, ¶ 11, 85 P.3d at 293–294 (internal citations omitted).

¶ 160 This Court found the above responses forced the jury to accept the plain meaning of the sentencing options and impose the sentence it deemed appropriate under the law and facts of the case. *Id.* This Court said such responses did not have the effect of creating the false choice dilemma addressed by the Tenth Circuit in *Mollett,* 348 F.3d at 916. *Id.* at 292.[24]

¶ 161 In the present case, the jury sent out a question concerning whether Appellant could ever be released from prison if he were sentenced to life without parole. The court denied the defense's requested instruction and replied, "you have all the law and evidence necessary to reach a verdict." (Tr. Vol.VIII, pgs.1550–1551). The court's response was appropriate under *Littlejohn* and prior case law.

¶ 162 Appellant next asserts the trial court erred in overruling his pre-trial motions to present evidence on the cost-effectiveness and lack of deterrent value of the death penalty. In *Smallwood v. State,* 1995 OK CR 60, ¶ 62, 907 P.2d 217, 233, *cert. denied,* 519 U.S. 980, 117 S.Ct. 431, 136 L.Ed.2d 330 (1996) this Court found a similar motion properly denied as such evidence is not relevant, and does not qualify as mitigating evidence, having no bearing on the appellant's character, prior record, circumstances of the offense committed or the appellant's future conduct, *citing Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986).

¶ 163 Title 21 O.S.2001, § 701.10(C) has been construed to mean "that a defendant may present any relevant evidence, within limitations of the rules of evidence, bearing on his character, prior record or the circumstances of the offense." *See Al–Mosawi v. State,* 1996 OK CR 59, ¶¶ 77–78, 929 P.2d 270, 287 *quoting Chaney v. State,* 612 P.2d 269, 279–80 (Okl.Cr.1980), *cert. denied,* 450 U.S. 1025, 101 S.Ct. 1731, 68 L.Ed.2d 219 (1981). Evidence of the cost effectiveness of the death sentence does not bear on a defendant's character, prior record or the circumstances of the offense. *Id.* Accordingly, we find the motion in the present case was properly denied.

¶ 164 Next, Appellant finds error in the trial court's denial of his motion for allocution and to argue last. This argument was fully addressed in *Duckett,* 1995 OK CR 61, ¶¶ 54–60, 919 P.2d at 20–21. Appellant has not persuaded us to revisit the issue. *See Frederick v. State,* 2001 OK CR 34, ¶ 174, fn. 13, 37 P.3d 908, 951.

¶ 165 Appellant further requests this Court reconsider its prior rejection of arguments challenging the admission of victim impact evidence as a "super aggravator" which negates or impermissibly diminishes the narrowing function that aggravating circumstances are constitutionally required to provide under the Eighth and Fourteenth Amendments. This argument was previously raised and addressed in Proposition XV, herein. Appellant does not add anything new to his argument, and has therefore not persuaded us to revisit the issue.

¶ 166 Lastly, Appellant finds error in the trial court's rejection of his motions to prevent the State from arguing lack of remorse when Appellant has maintained his innocence. This argument was addressed and rejected in Proposition XII, herein. Appellant has failed to present additional argument or authority to warrant our revisiting the issue. Accordingly, this assignment of error is denied.

### ISSUES RELEVANT TO BOTH STAGES OF TRIAL

¶ 167 Appellant argues in his eleventh assignment of error that photo-

---

**24.** In *Littlejohn,* this author wrote separately "giving the jury any additional information as to the meaning of life without parole is at best a half truth because it does not fully inform the jury of the ability of the Governor to commute the sentence pursuant to Art. 6, § 10 of the Oklahoma Constitution." (Lumpkin, J., concur in result, 2004 OK CR 6, ¶ 2, 85 P.3d at 303.)

graphs of the victim's injuries were improperly admitted into evidence. The admissibility of photographs is a matter within the trial court's discretion and absent an abuse of that discretion; this Court will not reverse the trial court's ruling. *Phillips*, 1999 OK CR 38, ¶ 47, 989 P.2d at 1032. Photographs are admissible if their content is relevant and their probative value is not substantially outweighed by their prejudicial effect. *Id.* The probative value of photographs of murder victims can be manifested in numerous ways, including showing the nature, extent and location of wounds, establishing the *corpus delicti,* depicting the crime scene, and corroborating the medical examiner's testimony. *Id.*

¶ 168 State's Exhibits Nos. 7, 8, 9, 11, 12, 13 and 59 all depict the injuries to the victim's anal region. The photos appear to show different bruises and injuries from different angles. Appellant argues these photos were unnecessarily cumulative, duplicative, graphic and inflammatory, and unfairly prejudicial. The photos were relevant in showing the nature and location of the victim's injuries. While there is some duplication in the areas of the victim's body and injuries depicted, Appellant has failed to meet his burden of showing the repetition was needless or inflammatory. *See Barr v. State,* 1988 OK CR 256, ¶ 8, 763 P.2d 1184, 1187. Certain photographs, such as State's Exhibit No. 13, were rather graphic. However, the State is not required to downplay the visual effects of a particular crime. *McCormick v. State,* 1993 OK CR 6, ¶ 12, 845 P.2d 896, 898–899. Additionally, while certain photos may have been cumulative to the testimony of medical examiner Dr. Choi, we find they were properly admitted as corroborative of her testimony.

¶ 169 State's Exhibit No. 59 was an enlargement of the actual Polaroid photograph. At trial, Appellant argued the photo was not properly admissible as the enlargement was distorted and not an actual representation of the image in the photo. The trial court overruled the motion as the sponsoring witness, Robin Justice, testified the photograph was an accurate representation of the injuries to the victim's anal region. Further, Ms. Justice testified the photograph was an enlargement, over twice the size, of the original Polaroid photograph. In light of her testimony identifying the photograph as an accurate representation, and as the jury was clearly informed the exhibit was an enlargement of the original photograph, we find Appellant has failed to show any prejudice.

¶ 170 In reviewing the prejudicial impact of the photographs this Court has said, "where the probative value of photographs or slides is outweighed by their prejudicial impact on the jury that is, the evidence tends to elicit an emotional rather than rational judgment by the jury then they should not be admitted into evidence." *Short,* 1999 OK CR 15, ¶ 27, 980 P.2d at 1094, *quoting President,* 1979 OK CR 114, 602 P.2d 222, 225. Applying that standard to this case, we find the photographs were not introduced solely to elicit an emotional response. The photographs were probative and that probative value was not outweighed by any prejudicial impact. Appellant has failed to meet his burden of prejudice, and we find no error in the admission of the photographs.

¶ 171 Appellant also argues he was harmed by the prosecution's apologies, comments, and undue emphasis on the graphic nature of the photographs during the first stage of trial. He asserts that during second stage closing argument, the prosecutor improperly pleaded with jurors to not forget to look at the victim's pictures, stating "we don't have any pictures of her alive, a few of her after the defendant committed his acts. Don't forget to look at those pictures as well", and that he improperly showed the jury State's Exhibits Nos. 8 and 59 during his final second stage closing argument.

¶ 172 During the admission of the photographs through the first stage testimony of Robin Justice, the prosecutor apologized to the jury for the graphic nature of certain photos. Defense counsel objected arguing the apology was an improper side-bar comment. The trial court sustained the objection but did not grant the defense's request to admonish the jury. The court explained to the prosecutor he was improperly directly addressing the jury while examining a witness. The prosecutor was told to save his apologies for closing argument. Appellant

now complains that despite the sustaining of his objections, the prosecutor improperly repeated his apology and placed undue emphasis on the graphic nature of the photographs.

¶ 173 Initially, Appellant will not now be heard to complain because the prosecutor followed the court's directions and saved his apologies for closing argument. Reading the challenged comments in context of the entire closing argument, we find comments about the photos were based on properly admitted evidence. The graphic nature of certain photos was mentioned, but not unduly emphasized. References to the photos were only a minor portion of the first stage closing argument. In light of the evidence presented against Appellant, the prosecutor's comments did not deny Appellant a fair guilt stage of trial.

¶ 174 The record shows no objection was raised to the second stage closing argument. Therefore, we review only for plain error, and find none. Reading the comments in context, they were based on the evidence and were not mere pleas for sympathy for the victim. Appellant asserts the photos and inflammatory prosecutorial comments combined to deny his rights to a fair sentencing proceeding and therefore the proceedings did not meet the heightened standards of reliability required in capital cases by the Eighth Amendment pursuant to *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Appellant's reliance on *Lockett* is misplaced. While Appellant's mitigation evidence was substantial, the evidence in aggravation was great. The jury would have come to the same conclusion of guilt and the death sentence had the photographs not been admitted. Accordingly, Appellant is not entitled to a new trial or new sentencing proceeding due to the admission of the photographs. This assignment of error is denied.

¶ 175 In his twelfth assignment of error, Appellant contends he was denied a fair trial by prosecutorial misconduct in both the first and second stages of trial. Initially, Appellant complains about apologies the prosecutor made during first stage closing argument for the graphic nature of some of the photographs introduced. This claim was ad-

dressed above in connection with the admission of the photographs and no error warranting relief was found.

¶ 176 Additionally, Appellant complains that during first stage closing argument the prosecutor improperly: 1) invoked sympathy for the victim; 2) commented on Appellant's right to remain silent; 3) resorted to personal opinion and an appeal to emotion; 4) cast aspersions on defense counsel; 5) misstated the evidence; 6) bolstered the credibility of Charvon Warner and Detective Willy Edwards; 7) relied on improper comments or opinions of Detective Mullenix; and 8) engaged in pointing and gesturing during argument.

¶ 177 We review Appellant's allegations under the well established rule that error alone is insufficient to require reversal. *Bland*, 2000 OK CR 11, ¶ 89, 4 P.3d at 727. Appellant must show not only that error occurred but also that the resulting prejudice from the error was such that reversal is warranted. *Id.*

¶ 178 The prosecutor's comment concerning the amount of pain the victim must have been feeling was met with an objection. The objection was sustained and the jury admonished to disregard the comment. Any error was therefore cured. *See Romano*, 1995 OK CR 74, ¶ 61, 909 P.2d at 116.

¶ 179 Next, it is improper for any comment to be made at trial concerning the silence of a defendant following a *Miranda* warning. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). *See also Romano*, 1995 OK CR 74, ¶ 13, 909 P.2d at 108. However, in the present case, Appellant waived his rights and voluntarily spoke with police. Under these circumstances, the prosecutor may properly comment on any statements or any refusals to answer made by Appellant. *See Romano*, 1995 OK CR 74, ¶ 14, 909 P.2d at 108; *Stout v. State*, 1984 OK CR 94, ¶ 24, *693* P.2d 617, 624, *cert. denied*, 472 U.S. 1022, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985).

¶ 180 At the beginning of the second portion of his first stage closing argument the prosecutor stated in part:

Ladies and gentlemen of the jury, when you try these kinds of cases, they're always tough on all of the participants emotionally. There's no way that—as jurors, you know how tough it is—but there never comes a time in your life, if you care about children and you care about justice, that going through pictures like we have in this case, going through evidence that involves a young baby, there never comes a time when you get to a point where you look at pictures where the worst has happened to a young baby and it doesn't hit you emotionally. If you get to that point, then you need to stay out of this kind of business.

(Tr. Vol.VI, pgs.1211–1212).

¶ 181 Defense counsel objected to the comment concerning "staying out of the business" as improper personal opinion, and an appeal for emotion and sympathy. The trial court agreed but found the rest of the statement all right. Any error in this comment was cured not only by the trial court sustaining the defense objection but also as the jury instructions specifically informed the jury to base their verdict on the law and the evidence and not emotions and sympathy. Appellant has not shown the jury did not follow their instructions. See *Turrentine*, 1998 OK CR 33, ¶ 26, 965 P.2d at 968 (juries are presumed to follow their instructions).

¶ 182 Next, during defense counsel's closing argument, counsel argued inconsistencies in the State's evidence. The prosecutor responded in turn, stating the defense was playing "trivial pursuit" games with the jury in making major points out of minor ones. Comments, which were "invited" and did no more than respond substantially in order to "right the scale", do not warrant reversing a conviction. *Teafatiller v. State*, 1987 OK CR 141, ¶ 8, 739 P.2d 1009, 1010–1011. We find the prosecutor did not improperly cast aspersions on the defense, but merely responded to comments by defense counsel.

¶ 183 Appellant next complains the prosecutor misstated the evidence when he said there was no evidence Shonda Waller was mad when she returned home from the store. Defense counsel objected and the trial court responded, "the jury heard the evidence". The record shows Shonda Waller testified she was mad when she arrived home from the grocery store because she had missed part of her soap opera. However, when the prosecutor's comment is read in context he is trying to make the point there was no evidence Shonda Waller was "hot and mad" and came home "blowing and going and fussing and being angry at anybody" and angry to the extent that she could have violently shaken the victim and caused her death. Any misstatement of the evidence was minor and not cause for reversal. See *Hartness v. State*, 1988 OK CR 141, ¶ 5, 760 P.2d 193, 194–195.

¶ 184 Appellant complains the prosecutor improperly bolstered the testimony of Charvon Warner and Detective Edwards. Argument or evidence is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating his personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony. *Cargle*, 1995 OK CR 77, ¶ 56, 909 P.2d at 823. We have reviewed the challenged comments and find they were permissible comments on the evidence presented, not improper vouching.

¶ 185 Appellant's claim that the prosecutor relied on improper comments and opinions of Detective Mullenix is not supported by the record. The trial court properly overruled the defense objection as the prosecutor was merely relating what took place during the interview between the detective and Appellant. Further, the jury saw the videotape of the interview and was able to compare that with the prosecutor's argument. There was no error warranting reversal.

¶ 186 Appellant's final complaint about first stage closing argument is that the prosecutor improperly pointed and gestured. At the close of arguments, defense counsel objected for the record stating the defense

had objected throughout argument to the prosecutor's pointing, gesturing and shaking. The record does not support defense counsel's claim that she objected throughout the closing argument and there is nothing in the record concerning the prosecutor's actions except defense counsel's after the fact assertion. Counsel's failure to timely object and raise the issue before the trial court has left this Court with an insufficient record to review on appeal.

¶ 187 Appellant also contends prosecutorial misconduct occurred during the second stage of trial. Specifically he argues the prosecutor: 1) commented in various ways that the death penalty was the only appropriate punishment; 2) went outside the record to appeal to emotion and sympathy; 3) improperly denigrated mitigation evidence; 4) told jurors that Appellant caused Vonnita Warner's premature birth and medical problems; 5) improperly asked the jury to show Appellant "the same mercy he showed to [the victim] that day as she is screaming out", and 6) commented on Appellant's lack of remorse.

¶ 188 Several times, and in various ways, the prosecutor stated that under the evidence, death was the only appropriate punishment. Of the six instances pointed out by Appellant, three were met with defense objections. In the first objection, defense counsel said the prosecutor's comment was equivalent to saying justice requires the death penalty. The court advised defense counsel to talk about it in her closing argument.

¶ 189 Defense counsel also objected when the prosecutor stated, "how does any punishment other than the death penalty do honor to her memory". (Tr. Vol.VIII, pg.1545–46). The trial court sustained the objection and admonished the jury to disregard the comment. Any error was therefore cured. The third and final objection was properly overruled by the court as the prosecutor stated the evidence warranted the death penalty. Reviewing the other comments not met with objections for plain error, we find none. In each instance, the prosecutor's comment about the appropriateness of the death sentence was preceded by a summary of the evidence in aggravation. The comments did not suggest that the jury's

only moral course was to impose the death penalty. The comments were well within the permissible bounds of closing argument and not personal opinions as to the appropriate sentence.

¶ 190 Appellant next claims the prosecutor went outside the record to appeal to the jurors' emotions when he commented on the amount of pain the victim must have felt during the rape, what was taken from Shonda Waller, and the life experiences taken away from the victim. It is improper for the prosecution to ask jurors to have sympathy for victims. *Tobler v. State*, 1984 OK CR 90, ¶ 16, 688 P.2d 350, 354. However, the comments in this case, those met with a timely objection and those that were not, fell within the prosecutor's wide range of permissible argument. *See Bland*, 2000 OK CR 11, ¶ 97, 4 P.3d at 728. The comments were based on the evidence and were reasonable inferences that could be drawn from the death of an eleven month old infant. None of the comments were so egregious as to have risen to the level of reversible error.

¶ 191 Appellant next contends the prosecutor denigrated the mitigating evidence by stating that no mitigation evidence could reduce Appellant's culpability for "raping and beating to death a baby" and "if you add up the mitigation . . . and you multiplied it times ten . . . would it outweigh the heinous, atrocious, cruel way that this defendant treated [the victim] the last 20 minutes, 30 minutes of her life". Appellant relies on *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and *Penry v. Lynaugh*, 492 U.S. 302, 319, 109 S.Ct. 2934, 2947, 106 L.Ed.2d 256 (1989) wherein the United States Supreme Court stated that persuading the sentencer to ignore mitigating evidence is error.

¶ 192 Of the two comments challenged by Appellant, only the second comment was met with an objection and the objection was overruled. (Tr. Vol.VIII, pg.1535). Reviewing the first comment for plain error only, we find none. The prosecutor has the right to discuss evidence during the second stage in arguing for an appropriate punishment. *Bland*, 2000 OK CR 11, ¶ 94, 4 P.3d at 727; *Mayes v. State*, 1994 OK

CR 44, ¶ 164, 887 P.2d 1288, 1322, *cert. denied,* 513 U.S. 1194, 115 S.Ct. 1260, 131 L.Ed.2d 140 (1995). The prosecutor may properly attempt to minimize the effect of the evidence presented by the defense. *Short,* 1999 OK CR 15, ¶ 77, 980 P.2d at 1105. Further, the jury was appropriately instructed as to the mitigating evidence and was not in any way precluded from considering any and all mitigating evidence. Accordingly, we find no error.

¶ 193 Defense counsel raised an objection to the prosecutor's comment that Appellant had caused the premature birth and medical problems of Vonnita Warner. The trial court sustained the objection and admonished the jury to disregard the comment. Further, at the direction of the court, the prosecutor clarified that there was no medical evidence showing that Appellant's actions caused Vonnita's premature birth. This cured any error.

¶ 194 Defense counsel also complains about comments asking the jury to show Appellant the same mercy he showed the victim. Defense counsel's objection was overruled. Comments regarding mercy have been interpreted as requesting sympathy for victim. *Wilson v. State,* 1998 OK CR 73, ¶¶ 99–102, 983 P.2d 448, 470–471, *cert. denied,* 528 U.S. 904, 120 S.Ct. 244, 145 L.Ed.2d 205 (1999); *Le,* 1997 OK CR 55, ¶ 53, 947 P.2d at 554; *Trice v. State,* 1993 OK CR 19, ¶ 32, 853 P.2d 203, 214, *cert. denied,* 510 U.S. 1025, 114 S.Ct. 638, 126 L.Ed.2d 597 (1993). The State should not encourage the jury to impose the death penalty out of sympathy for the victims. *Le,* 1997 OK CR 55, ¶ 53, 947 P.2d at 554. While such comments are not to be condoned, we do not believe the comments in the present case were so grossly improper to warrant reversal or modification.

¶ 195 Finally, Appellant finds error in the prosecutor's comment on his lack of remorse. Defense counsel's objection was overruled. (Tr. Vol.VIII, pg.1541). The prosecutor's comment came after a review of the evidence supporting the "continuing threat" aggravator.

¶ 196 Lack of remorse is an appropriate consideration for the jury in the second stage of a capital trial. *Pickens v. State,* 1993 OK CR 15, ¶ 35, 850 P.2d 328, 337, *cert. denied,* 510 U.S. 1100, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994). Evidence of lack of remorse is pertinent to a finding that the defendant is a continuing threat to society. *Id.* Appellant distinguishes *Pickens* and cases where the defendant admitted committing the murder then expressed a lack of remorse from cases such as the present case where the defendant maintains his innocence. However, the lack of remorse has been found a proper subject for comment in the second stage of a murder trial even when the defendant had not confessed to the crime. *See Powell,* 2000 OK CR 5, ¶ 145, 995 P.2d at 538; *Woodruff,* 1993 OK CR 7, ¶ 70, 846 P.2d at 1141. Accordingly, we find no error in the prosecutor's comments.

¶ 197 "Allegations of prosecutorial misconduct do not warrant reversal of a conviction unless the cumulative effect was such [as] to deprive the defendant of a fair trial." *Short,* 1999 OK CR 15, ¶ 80, 980 P.2d at 1105 *quoting Duckett,* 1995 OK CR 61, ¶ 47, 919 P.2d at 19. We have thoroughly reviewed each of Appellant's allegations of prosecutorial misconduct and while some comments may have tested the bounds of propriety, we find none of the comments deprived Appellant of a fair trial, or had any prejudicial impact on the judgment and sentence. Accordingly, this assignment of error is denied.

### CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

¶ 198 In his seventeenth assignment of error, Appellant challenges trial counsel's effectiveness in both the first and second stages of trial. An analysis of an ineffective assistance of counsel claim begins with the presumption that trial counsel was competent to provide the guiding hand that the accused needed, and therefore the burden is on the accused to demonstrate both a deficient performance and resulting prejudice. *Bland,* 2000 OK CR 11, ¶ 112, 4 P.3d at 730–731 *citing Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80

L.Ed.2d 674 (1984) and *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

¶ 199 *Strickland* sets forth the two-part test which must be applied to determine whether a defendant has been denied effective assistance of counsel. *Id.* First, the defendant must show that counsel's performance was deficient, and second, he must show the deficient performance prejudiced the defense. *Id.* Unless the defendant makes both showings, "it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id. quoting Strickland,* at 687, 104 S.Ct. at 2064. Appellant must demonstrate that counsel's representation was unreasonable under prevailing professional norms and that the challenged action could not be considered sound trial strategy. *Id.* The burden rests with Appellant to show that there is a reasonable probability that, but for any unprofessional errors by counsel, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.,* citing *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070, 80 L.Ed.2d at 700. The issue is whether counsel exercised the skill, judgment and diligence of a reasonably competent defense attorney in light of his overall performance. *Id.*

¶ 200 Appellant alleges that in the first stage of trial, counsel was ineffective for failing to timely prepare and provide a transcript of Shonda Waller's videotaped interview with police. During his cross-examination of Ms. Waller, Appellant offered Defendant's Exhibit No. 4, the videotaped interview. The State did not object to its admission if the tape was played for the jury in its entirety. (Tr. Vol.IV, pgs.781–82). Defense counsel agreed, and indicated they had a transcript of the interview prepared. The prosecutor objected, arguing that was the first they had known that the defense had a transcript of the interview, and that the transcript should not be published to the jury because the State had not had time to review it. Defense counsel responded the transcript had been prepared solely in preparation for trial, as they had not initially intended to play the tape for the jury. The trial court informed defense counsel the next time she played a tape for a jury, she needed to bring a transcript for each juror. After resolving some initial electronic issues in playing the tape, it was played in its entirety for the jury. The record contains no objections or complaints about the quality of the tape after it was played.

¶ 201 Appellant has failed to show he was prejudiced by counsel's failure to provide each juror with a written transcript of the taped interview. Appellant argues the jury's question during deliberations to rehear the videotape with transcripts "suggests the quality of the audio was questionable if not unreliable". The record does not support this argument. In getting the tape set to play for the jury, the judge noted the "buzz" and "hum" on the tape prevented him from clearly hearing Waller. However, he directed that another television be used to see if the sound was any better. No further objections were raised to the videotape.

¶ 202 The State argues the jury's questions to rehear the tape with transcripts concerned Appellant's videotaped interview (State's Exhibit No. 48) for which the State had provided written transcripts. The State argues the trial court understood the jury's question to refer to State's Exhibit No. 48, not Defense Exhibit 4, Waller's taped interview. The record is not clear as to which videotape the jury was referring to in its questions. However, the record is clear that no further objections or comments were made as to the audio quality of Defense Exhibit No. 4 after it was played for the jury. On this record, Appellant's argument that the audio quality was unreliable is pure speculation.

¶ 203 Assuming arguendo there were audio problems with the tape, Appellant has not shown that a written transcript prepared from listening to the questionable tape would be any more reliable than the tape itself. Accordingly, Appellant has failed to show that had transcripts been provided to each juror that the outcome of his trial would have been different. Appellant has failed to establish counsel's ineffectiveness in this instance. *See Bland,* 2000 OK CR 11, ¶ 113, 4

P.3d at 731 (when a claim of ineffectiveness of counsel can be disposed of on the ground of lack of prejudice, that course should be followed, *citing Strickland,* at 697, 104 S.Ct. at 2069).

¶ 204 As for the second stage of trial, Appellant argues defense counsel was ineffective for failing to use available medical records suggesting that the premature birth of Vonnita Warner may have been the result of a prior laparotomey and laser surgery for endometriosis or the effects of progressive endometriosis, rather than the alleged domestic abuse of Vonricca Warner. This allegation of ineffectiveness is supported by affidavits attached to Appellant's Rule 3.11 Motion to Supplement Direct Appeal Record with Attached Exhibits and/or For an Evidentiary Hearing, filed contemporaneously with the appellate brief.

¶ 205 The affidavits filed in support of a request for an evidentiary hearing are not considered, by reason of their filing with this Court, part of the trial record. *Bland,* 2000 OK CR 11, ¶ 115, 4 P.3d at 731. If the items are not within the existing record, then only if they are properly introduced at the evidentiary hearing will they be a part of the trial court record on appeal. *Id.* Here, as the information contained in these affidavits is not properly before the Court at this time, and as Appellant has failed to develop his arguments in his appellate brief, without citation to the affidavits, he has effectively waived review of those arguments. We have consistently held that we will not review allegations of error that are neither supported in the record or by legal authority. *Id.* The affidavits will be considered when we address the application for evidentiary hearing on sixth amendment claims.

¶ 206 Accordingly, having thoroughly reviewed the record, and Appellant's allegations of ineffectiveness, we have considered counsel's challenged conduct on the facts of the case as viewed at the time and have asked if the conduct was professionally unreasonable and, if so, whether the error affected the jury's judgment. *Id.* Defense counsel's performance in this case did not "so undermine the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* quoting *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064. Appellant has failed to meet his burden of showing a reasonable probability that, but for any unprofessional errors by counsel, the result of the trial would have been different as any errors or omissions by counsel did not influence the jury's determination of guilt or decision to impose the death sentence. Accordingly, we find that Appellant was not denied effective assistance of counsel and this assignment of error is denied.

## APPLICATION FOR EVIDENTIARY HEARING ON SIXTH AMENDMENT CLAIMS

¶ 207 Rule 3.11(B)(3)(6), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2000), allows an appellant to request an evidentiary hearing when it is alleged on appeal that trial counsel was ineffective for failing to "utilize available evidence which could have been made available during the course of trial. . . ." Once an application has been properly submitted along with supporting affidavits, this Court reviews the application to see if it contains "sufficient evidence to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence." Rule 3.11(B)(3)(b)(i).

¶ 208 Appellant asserts his motion is related to Propositions X, XIV (C), XVII (B) and XVII (C) raised in his direct appeal brief, which involve a failure by trial counsel to effectively use all available evidence and/or to adequately investigate, identify, obtain, and effectively use evidence which was available and should have been presented or otherwise utilized at trial.

¶ 209 Attached in support of the motion as Exhibit 1 is a copy of a document entitled "Standard Supplemental Report" and refers to an interview of Sammy McKinney conducted by Detectives Griffin and Mullenix concerning the victim's death. The information contained in the Report is not much different than evidence presented at trial. Basically, the report states that

McKinney kept the victim Wednesday night and returned her to Ms. Waller on Thursday; he was notified the victim was in the emergency room and he and his mother went to the hospital; McKinney waited outside the victim's room with Appellant; he and Appellant overheard an officer say they were working a homicide; Appellant became very nervous and did not say anything until an officer asked McKinney a question at which point Appellant interrupted and prevented McKinney from answering; McKinney and Appellant stayed in the family room at the hospital until they were escorted to the police station for questioning.

¶ 210 While certain details contained in the report were not made known to the jury, the bulk of the information contained in the report was presented to the jury. Further, nothing in the report relates to any overt act on McKinney's part in furtherance of the victim's murder. Any failure on trial counsel's part to use this report at trial does not raise a strong possibility of ineffectiveness because even if the report had been presented to the jury, there is no indication it would have impacted the outcome of the trial.

¶ 211 Exhibit 2 is a copy of a memo concerning an interview with Sammy McKinney conducted by OIDS Investigator Jack Stringer. The memo is addressed to OIDS attorneys. The interview with McKinney covered his relationship with Waller, Waller's relationship with Appellant, his knowledge of the circumstances surrounding the victim's death, and Waller's conduct after the victim's death. As with Exhibit 1, none of the information contains any evidence of an overt act connecting McKinney to the victim's death. A lot of the information in the memo is McKinney's perception of Waller and Appellant's relationship, and what Waller told him about the victim's death. That information was not relevant to an issue in the case and would only have served to confuse the issues if presented to the jury. Whether considered separately or together with Exhibit 1, Appellant has failed to show Exhibit 2 would have had an impact on the outcome of his trial if it were admissible and presented to the jury.

¶ 212 Appellant further argues in his Motion that trial counsel failed to subject to meaningful adversarial testing the prosecution's contention that Appellant was responsible for the premature birth of Vonnita Warner and her lifelong severe medical problems. Appellant argues that available medical records showed that Vonricca Warner had a significant medical history for laparotomy and laser surgery by endometriosis prior to the premature birth of Vonnita Warner. Also, he contends there is no claim in the records by Vonricca Warner that her premature labor and delivery was brought about by any alleged domestic abuse by Appellant. Appellant asserts prejudice is demonstrated by post-verdict interviews revealing that several jurors believed that Appellant was responsible for the birth defects of Vonnita as a result of physical violence to Vonricca, and "this strongly weighed into the punishment decision".

¶ 213 In support of this argument, Appellant offers Exhibit 3, a copy of a "Declaration of Custodian of Medical Records" from Lompoc District Hospital, Lompoc, California, regarding Vonricca Warner, with attached medical records. These medical records include a Discharge Summary, Obstetric Admitting Record, History and Physical Examination, Health History Summary, Initial Pregnancy Profile, Labor and Delivery Summary, Surgery Record, and Operative Report. These records essentially state that Vonricca Warner gave birth on January 29, 1992, by cesarean section to a female baby whose gestational age was 26 weeks. The records indicate the birth was very premature and the baby weight only 1 pound 9 ounces. The records also indicate that Vonricca Warner had past surgeries for laparotomy and laser surgery for endometriosis. Exhibit 4 contains medical records from Lompoc District Hospital for Vonnita Warner, whose birth is referred to above. These records include a Transfer Summary, Initial Newborn Profile, Newborn Discharge, Obstetric Admitting Record, and Labor and Delivery Summary. In addition to repeating much of the information included in the above records, these records indicate Vonnita's birth at 26 weeks was extremely prema-

ture, she was in "poor condition" upon birth, and required an oxygen mask.

¶ 214 Exhibit 5 is a sworn affidavit from Sandra Collett, an investigator with OIDS. Ms. Collett states that at the request of appellate defense counsel, she obtained, via court order, medical records relating to Vonricca Warner's premature labor and delivery of Vonnita Warner. Ms. Collett also states that in her review of the medical records, she did not find any notations indicating the cause of the premature labor, and specifically that the records contained no allegations of domestic abuse of Vonricca Warner by Appellant. However, the medical records did indicate that Vonricca Warner has a past surgical history significant for a laparotomy and laser surgery for endometriosis. Ms. Collett attaches a copy of relevant excerpts from *The Merck Manual of Diagnosis and Therapy* (17th ed.1999) addressing endometriosis and premature labor.

¶ 215 Appellant also relies on a sworn affidavit from Lewis Moon, a legal intern in the Oklahoma County Public Defenders Office. Mr. Moon states he was present during Appellant's trial. He also states after the trial he interviewed Juror Frey who stated that he and other jurors believed Appellant was responsible for Vonnita's birth defects as a result of the physical violence committed against Vonricca Warner, and that such belief strongly weighed into the punishment decision. (O.R.1158). This affidavit is attached to the Motion for New Trial filed with the District Court.

¶ 216 To prove Appellant was a continuing threat to society, the State presented evidence that Appellant had physically assaulted Vonricca Warner by hitting her about her head and body with his hands and fists and forcefully throwing her to the ground knowing that she was pregnant. (Tr. Vol.VII, pgs.1310–1317) (O.R. 25–28, State's Second Amended More Definite and Certain Statement of Allegations Set Forth in the Bill of Particulars in re Punishment). Additionally, Vonricca Warner testified that it was immediately following this trauma, she began to have problems with her pregnancy and Vonnita was born, prematurely, two months later. (Tr. Vol.VII, pg.1318).

¶ 217 Defense counsel's failure to use the attached medical records at trial is not sufficient to show by clear and convincing evidence a strong possibility of ineffectiveness. The medical records do not say what caused Vonricca Warner's premature labor or Vonnita's premature birth. The records do not say that endometriosis will cause premature birth. Further, Vonricca Warner did not testify that Appellant caused her premature labor. While the inference was undoubtedly there that Appellant's physical assault of Vonricca contributed to the premature labor and birth, presentation of medical records that did not attribute the premature labor and birth to Appellant's physical assault would not have rebutted that inference. Further, in light of the substantial evidence in aggravation, Appellant has failed to show that the omission of the medical records was sentence determinative.

¶ 218 Further, Vonricca Warner testified she never reported to law enforcement or medical personnel she suffered domestic abuse at the hands of Appellant. Therefore, records that included no report of domestic abuse would have been merely cumulative to her testimony.

¶ 219 Evidence contained in the medical records was either not relevant to an issue in the trial and would have only served to confuse the jury, or it was cumulative to trial testimony. Therefore, we find presentation of the medical records in question would not have significantly influenced "the jury's appraisal" of Appellant's moral culpability. *Cf. Wiggins v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 2544, 156 L.Ed.2d 471 (2003) *quoting Williams v. Taylor,* 529 U.S. 362, 398, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

¶ 220 Exhibit 6 is a copy of a CBS news article, dated October 7, 2003, entitled, *Execution Drug May Cause Suffering.* Exhibit 7 is a copy of a New York Times article, written by Adam Liptak and dated October 7, 2003, entitled *Critics Say Execution Drug May Hide Suffering.* Exhibit 8 is a copy of an article taken from the web page of Nebraskans Against the Death Penalty, entitled *The Alternative to the Electric Chair is Life Without Parole.*

¶ 221 We fail to see how counsel was ineffective for failing to obtain and use these articles. Defense counsel sufficiently challenged the application of the death penalty in Appellant's case by filing pre-trial motions to "strike the death penalty sentencing procedure as unconstitutional", and to "quash the bill of particulars and declare death penalty unconstitutional". (O.R.415–516, 438–440). While one of the articles mentions two executions carried out by the State of Oklahoma, Appellant does not explain, and it is not readily apparent, how the articles are relevant to the procedures used in Oklahoma.

¶ 222 Upon review of the application and the supporting affidavits, we find Appellant has not shown by clear and convincing evidence a strong possibility that defense counsel was ineffective for failing to request a continuance of the trial. Accordingly, we decline to grant Appellant's application for an evidentiary hearing.

### ACCUMULATION OF ERROR CLAIM

¶ 223 In his eighteenth assignment of error, Appellant contends that, even if no individual error merits reversal, the cumulative effect of such errors warrants either reversal of his conviction or a modification of his sentence. A cumulative error argument has no merit when this Court fails to sustain any of the other errors raised by Appellant. *Bland*, 2000 OK CR 11, ¶ 132, 4 P.3d at 734. However, when there have been numerous irregularities during the course of a trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors is to deny the defendant a fair trial. *Id.* While certain errors did occur in this case, even considered together, they were not so egregious or numerous as to have denied Appellant a fair trial. Therefore, no new trial or modification of sentence is warranted and this assignment of error is denied.

### MANDATORY SENTENCE REVIEW

¶ 224 Pursuant to 21 O.S.2001, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of the aggravating circumstances as enumerated in 21 O.S.2001, § 701.12. Turning to the second portion of this mandate, the jury found the existence of two (2) aggravating circumstances: 1) the murder was especially heinous, atrocious or cruel; and 2) there was an existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. 21 O.S.2001, § 701.12(4)(7). As discussed above, each of these aggravators was supported by sufficient evidence.

¶ 225 In Proposition XIV, we set out the mitigation evidence presented by Appellant's thirteen second stage witnesses. Upon our review of the record and careful weighing of the aggravating circumstances and the mitigating evidence, we find the sentence of death to be factually substantiated and appropriate. Under the record before this Court, we cannot say the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to 21 O.S.2001, § 701.13(C), in finding that the aggravating circumstances outweighed the mitigating evidence. Accordingly, finding no error warranting reversal or modification, the **JUDGMENT** and **SENTENCE** for First Degree Murder is **AFFIRMED** and the **APPLICATION FOR EVIDENTIARY** HEARING ON SIXTH AMENDMENT CLAIMS IS DENIED. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2005), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

C. JOHNSON, J., concur.

A. JOHNSON, J., specially concur.

CHAPEL, P.J., and LEWIS, J., concur in result.

CHAPEL, Presiding Judge, concur in results.

¶ 1 I concur in this decision by reason of *stare decisis*. See my separate writings in *Gore v. State*, 2005 OK CR 14, 119 P.3d 1268; *Fairchild v. State*, 1999 OK CR 49, 992 P.2d 350 and *Easlick v. State*, 2004 OK CR 21, 90 P.3d 556.

A. JOHNSON, J., Specially concurs.

¶ 1 I concur in this opinion, but write specially to again address our rule limiting the admission of defense evidence intended to show that another person committed the crime charged. *See Gore v. State*, 2005 OK CR 14, 119 P.3d 1268, 1278–79 (A. Johnson, J., concurring in results).

¶ 2 Limitations upon the admission of proffered evidence of third-party guilt are necessary to assure a balanced and fair criminal trial. On the other hand, rules defining those limitations must be rationally related to their purpose—to keep out evidence that is without sound probative value and that serves only to confuse the issues before the jury.

¶ 3 To the extent the Oklahoma rule requires the defense to show an "overt act" on the part of an alleged third-party perpetrator before the evidence may be admitted, it is arbitrary. An arbitrary rule of exclusion creates the risk of denying a criminal defendant his right to a meaningful opportunity to present a complete defense.

LEWIS, Judge, concurs in results.

¶ 1 I am of the opinion that there were several errors in the handling of this trial. However, in view of the overwhelming evidence of guilt, I concur in the result.